1  William N. Lobel (State Bar No. 93202)
   wlobel@thelobelfirm.com
2  Mike D. Neue (State Bar No. 179303)
   mneue@thelobelfirm.com
3  THE LOBEL FIRM, LLP
   840 Newport Center Drive, Suite 750
4  Newport Beach, CA 92660
   Telephone:    (949) 999-2860
5  Facsimile:    (949) 999-2870

6  Reorganization Counsel for Debtor
   and Debtor-in-Possession, Dale Alfred Williams
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11

12

   In re                          |  Case No. 2:12-bk-15652 RK
13                                 |
   DALE ALFRED WILLIAMS,           |  Chapter 11
14                                 |
                                   |  **MOTION FOR ORDER: (1) APPROVING
15          Debtor and Debtor-in-  |  DISCLOSURE STATEMENT;
            Possession.            |  (2) APPROVING NOTICE PROCEDURES;
16                                 |  (3) ESTABLISHING CURE
                                   |  PROCEDURES; (4) ESTABLISHING
17                                 |  CONFIRMATION PROCEDURES AND
                                   |  DEADLINES; AND (5) ESTABLISHING
18                                 |  CERTAIN BAR DATES; MEMORANDUM
                                   |  OF POINTS AND AUTHORITIES IN
19                                 |  SUPPORT THEREOF**

20                                 |  **Disclosure Statement Hearing:**

21                                 |  DATE:    August 8, 2012
                                   |  TIME:    11:00 a.m.
22                                 |  PLACE:   Courtroom 1675

23

24

25

26

27

28

1 **TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE:**

2       Pursuant to this "Motion for Order: (1) Approving Disclosure Statement; (2) Approving

3 Notice Procedures; (3) Establishing Cure Procedures; (4) Establishing Confirmation Procedures

4 and Deadlines; and (5) Establishing Certain Bar Dates (the "Motion"), Dale A. Williams, the

5 debtor and debtor-in-possession herein (the "Debtor"), hereby seeks, pursuant to sections 105 and

6 1125 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 3017, 3018,

7 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), an order

8 authorizing and approving: (1) the "Disclosure Statement Regarding Debtor's First Amended Plan

9 of Reorganization (Dated June 5, 2012)" (the "Disclosure Statement"), as it may be amended prior

10 to the conclusion of, or as a result of, the hearing thereon; (2) certain specified procedures for the

11 transmittal of the Disclosure Statement, the "Debtor's First Amended Plan of Reorganization

12 (Dated June 5, 2012)" (the "Plan"), and notice of the same (collectively, the "Solicitation

13 Packages"); (3) cure procedures for contracts and leases to be assumed pursuant to the Plan; (4)

14 the setting of the requisite dates in connection with the solicitation, voting, and confirmation

15 process for the Plan; and (5) the setting of certain bar dates.

16       This Motion is based upon the following Memorandum of Points and Authorities, the

17 records and files in this chapter 11 case, and such additional evidence and argument as may be

18 properly presented at or before the hearing on the Motion.

19 **MEMORANDUM OF POINTS AND AUTHORITIES**

20 **I.**

21 **STATEMENT OF FACTS**

22 **A.**   **Background**

23      1.   On May 27, 2011 (the "Petition Date"), the Debtor commenced his bankruptcy case

24 by filing with this Court a voluntary petition for relief under chapter 11 of title 11 of the United

25 States Code, 11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code").

26      2.   On July 8, 2011, the Office of the United States Trustee (the "U.S. Trustee")

27 appointed a three-member Official Committee of Unsecured Creditors (the "Creditors'

28 Committee") in the Debtor's case pursuant to Section 1102. The Creditors' Committee is

1  comprised of the following three members: (a) Kimberly Williams; (b) Bank of Sacramento, and

2  (c) Pacific Western Bank.

3      3.      No request has been made for the appointment of a trustee or examiner, and the

4  Debtor is continuing in the operation and management of his business affairs pursuant to

5  sections 1107 and 1108 of the United States Bankruptcy Code.

6      4.      On July 27, 2011, the Court established October 31, 2011 as the bar date for filing

7  claims in the Debtor's bankruptcy case (the "Initial Bar Date").  Thereafter, the Court, at the

8  Debtor's request, set a supplemental bar date for certain parties (who may hold  potential claims in

9  connection with litigation against the Debtor's business entities) (the "Business Litigation

10  Claimants") who were not provided with notice of the Initial Bar Date.  The bar date for the

11  Business Litigation Claimants was established as April 6, 2012 and, with respect to First Interstate

12  Bank, as July 16, 2012 (and, together with the Initial Bar Date, the "Claim Bar Dates").

13  **B.    The Debtor**

14      5.      The Debtor is an individual residing in Newport Beach, California.  Mr. Williams

15  has been in the real estate investment and development business for over 45 years, during which

16  time he and/or his affiliated companies have constructed, acquired and developed a broad cross-

17  section of both commercial and residential real estate, including office properties, retail properties,

18  multifamily developments, mobile home parks and self-storage facilities.  Mr. Williams'

19  investment and development activities have been, and currently are, conducted through a number

20  of companies that are referred to collectively as the "Companies."  The Companies and their

21  properties are described in more detail in Section II.B.2 of the Disclosure Statement.

22      6.      Mr. Williams graduated from the University of California, Berkeley with a degree

23  in real estate finance in 1963.  Thereafter, he worked in the construction industry and in the

24  management and leasing of commercial office space, which fostered his interest and skill in the

25  field of real estate development and acquisition.  From the late 1960s, and continuing through the

26  late 1970s, Mr. Williams developed and acquired numerous mobile home parks, condominiums,

27  single-family residential properties and apartment complexes throughout Southern California.

28  During the time period from 1976 through 1979, in addition to his development and acquisition

1  activities in Southern California, Mr. Williams expanded his real estate activities into Northern

2  California, building several mobile home parks in the Sacramento and surrounding areas.

3         7.      During the time period from 1979 through 1986, Mr. Williams completed and sold

4  his remaining real estate portfolio in Southern California (which consisted of 100 town homes in

5  five (5) real estate projects).  In or about 1986, Mr. Williams relocated to Sacramento, California,

6  opened a permanent office in the Sacramento area and, through the Companies, began the

7  construction and acquisition of single-family and townhouse projects in the South Sacramento and

8  outlying areas, developing and selling nearly 300 single family residences and town homes in

9  South Sacramento, Greenhaven and Citrus Heights, California.

10        8.      In addition to these residential developments, Mr. Williams used his prior

11  experience and expertise as a developer of mobile home parks, and combined this role with that of

12  a mobile home dealer, thus fulfilling the complementary roles of originator, owner and retail

13  supplier in the mobile home arena.  With the availability of 729 mobile home spaces in his parks,

14  Mr. Williams and his Companies established seven (7) dealerships to sell the mobile homes and

15  fill the parks.

16        9.      Thereafter, from approximately 1988 to 1991, to address the changing needs of the

17  real estate market, Mr. Williams, through the Companies, became a significant builder of

18  apartment homes in the Greater Sacramento area.  These developments covered the Northern

19  California corridor of Modesto, Fairfield and Rocklin, California.  During this time frame, Mr.

20  Williams and his Companies developed over 940 units in five (5) high-end apartment home

21  projects.  These developments were ultimately sold into the marketplace, and the resulting

22  proceeds were deployed into future projects.

23        10.     During the mid-to-late 1990s, Mr. Williams, again recognizing the needs of a

24  changing real estate market, transitioned the majority of the Companies' real estate holdings and

25  developmental focus from residential real estate to the mobile home park sector.  Due to the

26  increased needs of the retirement community, there was a pressing need in the market for mobile

27  home and RV communities throughout the United States.  With available capital from the sale of

28  the Companies' apartment developments and certain mobile home parks in California, Mr.

1   Williams, through the Companies, acquired nine (9) mobile home & RV parks, eight (8) in Florida
2   and one (1) in Arizona, totaling 3,805 spaces.

3       11.     By the late 1990s, the Companies had established a significant presence in the
4   mobile home park development and ownership segment, and had divested most of their apartment
5   properties.  These divestitures allowed the Companies to, in addition to their mobile home park
6   holdings, focus on the growing self-storage industry.  From 1997 through 2003, Mr. Williams,
7   through the Companies, had acquired seven (7) self-storage facilities, one (1) in Arizona, four (4)
8   in Texas and three (3) in Tennessee, totaling 33,702 in rentable square feet.

9       12.     With a growing small-business demographic and increasing demand for storage
10  space by the average U.S. consumer, the Companies were positioned to make a considerable
11  investment in the self-storage industry.  By 2003, the Companies acquired a portfolio of highly
12  visible self-storage facilities located in the Southern California, Phoenix, Arizona and Nevada
13  areas. This portfolio, which included 14 facilities, brought the Companies' ownership to a total of
14  21 properties in the self-storage segment.  In addition, the Companies added to their portfolio with
15  development contracts to build three self-storage facilities in Texas and Florida and, in 2004, the
16  Companies' acquired new facilities totaling 122,000 square feet, furthering the Companies' self-
17  storage presence in Las Vegas, Phoenix and Southern California.

18      13.     At the height of the commercial real estate market in 2006, the Companies sold the
19  vast majority of their self-storage portfolio (26 facilities), realizing a substantial profit.  The profit
20  from the sale of these self-storage facilities allowed Mr. Williams and the Companies to invest the
21  proceeds into several commercial industrial projects located in Florida and Texas, as well as a
22  home furnishing center located in Southern California.

23      14.     The unprecedented collapse of the commercial real estate market in 2007, however,
24  resulted in a dramatic devaluation of the Companies' remaining real estate holdings.  Due to a
25  decline in both property values and cash flows, many of the Companies' properties suffered.  In
26  many cases, the distress resulted in non-compliance with various financial covenants and the
27  Companies' inability to meet certain contractual debt service payments.  Similarly, a lack of

28

1  liquidity in the marketplace, coupled with depressed cash flows and more rigorous underwriting

2  standards, precluded the Companies from addressing certain issues by way of new financing.

3      15.     Notwithstanding Mr. William's and the Companies' efforts, in 2009, four (4) of the

4  Companies' properties were returned to their respective lenders via deeds-in-lieu of foreclosure,

5  and one (1) property was returned to the lender through foreclosure. In 2010, four (4) additional

6  commercial properties located in Florida were returned to the lenders via foreclosures.

7      16.     As of the first quarter of 2011, the Companies, under Mr. Williams' management,

8  continue to manage a real estate portfolio that is heavily-weighted toward mobile home and RV

9  communities, with the balance of the Companies' properties in the self-storage and commercial

10  sectors.

11      17.     Due to the ongoing difficult economic conditions in the real estate market, the

12  value of Mr. William's interests in the Companies have declined significantly, and the Companies

13  have, to a large degree, been unable to manage through these difficult economic times.  In

14  addition, Mr. Williams has personally guaranteed loans of the Companies that total nearly $62

15  million, thereby exposing Mr. Williams to an estimated $17 million in personal guaranty liability

16  (after consideration of the loans and the estimated value of the Companies' assets securing the

17  loans). Mr. Williams also has considerable personal unsecured debt owed to several lending

18  institutions that he does not currently have the ability to repay in full, and certain of these lenders

19  commenced collection actions against Mr. Williams. Mr. Williams also has significant priority

20  domestic support and tax obligations.

21  C.   **The Plan**

22      18.     The Plan[1] divides Claims and Interests into Classes and sets forth the treatment for

23  each Class. Pursuant to section 1123 of the Bankruptcy Code, administrative expenses and

24  priority tax claims are not classified. All classified Claims and Interests are included in the

25  Classes summarized below:

26  ─────────────────────

27  [1] The following is merely a summary of the categories of classified Claims and Interests
under the Plan.  Interested parties should review the Plan in its entirety to determine which Claims
or Interests are included in a particular Class.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a.  Class 1A consists of the Secured Claims of Union Bank (Newport Beach Property)

b.  Class 1B consists of the Secured Claims of Pacific Western Bank (Newport Beach Property)

c.  Class 2A consists of the Priority Domestic Support Obligation Claims of Kimberly Williams

d.  Class 2B consists of the Priority Domestic Support Obligation Claims of Sarah Williams

e.  Class 2C consists of the Other Priority Claims

f.  Class 3 consists of the General Unsecured Claims

g.  Class 4 consists of Insider Claims

h.  Class 5 consists of Interests

19.  Classes 1B, 2A, 2B, and 3 are the only Voting Classes under the Plan because the remaining Classes are not impaired, or are deemed to reject the Plan.

20.  As set forth in detail in the Plan and Disclosure Statement, the Plan contemplates the reorganization of the Debtor's financial affairs and the repayment of creditors' Allowed Claims over time.  In sum, the Plan has the following structure:

• The Debtor's Plan is a "new value" plan under which the Reorganized Debtor will receive the sum of not less than $750,000 to be paid by the New Value Investors in exchange for the right, but not the obligation, to collectively purchase up to a twenty five percent (25%) passive (i.e. non- management) interest in each new real estate investment opportunity acquired and managed by the Reorganized Debtor over the ten (10) year period commencing with the Effective Date of the Plan.  The terms of the New Value Investments are governed by the First Offer Agreement, which is attached to the Plan as Exhibit "5."  The proceeds of the New Value Investment will be used to make distributions to Creditors under the Plan, and are expected to satisfy the balance of any unpaid Allowed Administrative Claims as of the Effective Date, and to pay amounts due to holders of Class 2 Priority Domestic Support Obligation Claims.

- Secured Creditors shall retain their secured liens, and shall receive treatment under that plan which either leaves them unimpaired (Class 1A), or provides repayment terms equivalent to a market-rate transaction (Class 1B). Alternatively, the Debtor may elect to surrender the applicable collateral to the holders of Secured Claims.

- Creditors holding Allowed Priority Domestic Support Obligation Claims against the Debtor are classified in Classes 2A and 2B, and are entitled to vote on the Plan. Under the Plan, the holders of Allowed Priority Domestic Support Obligation Claims shall each receive payments of principal totaling $1.6 million during the Plan Term (payable at the rate of $200,000 per year, plus an additional $600,000 when sufficient cash is available to fund the Plan reserve accounts and make the additional payments). At the end of the Plan Term, each of the Debtor's ex-wives shall receive a note payable for the remaining balance of their claims, and the terms for repayment of these notes shall be: (a) interest rate: 4% simple per annum; (b) maturity date: 10 years following the 60th calendar month following the Effective Date; (c) payments totaling $200,000 per year; and (d) balance due upon maturity.

- Creditors holding Allowed General Unsecured Claims against the Debtor are classified in Class 3, and are entitled to vote on the Plan. Under the Plan, each Class 3 General Unsecured Creditor shall receive its Pro Rata share of the net proceeds to be collected and disbursed by a Creditors' Trust Trustee from a promissory note payable by the Reorganized Debtor in the original principal amount of $4 million, subject to potential adjustments as described in section V.F.2 of the Plan.

- The source of the payments to Creditors under the Plan will be the New Value Investment, post-Effective Date net income, retained Cash, and proceeds received from property sales, refinancings, or new investment capital, received on account of the Reorganized Debtor's ownership interests in various companies.

- The Debtor shall retain his ownership interests in assets of the Estate, subject to the obligations and liens created by or preserved under the Plan.

## II.

### RELIEF REQUESTED

**A.**    **Approval of the Disclosure Statement Pursuant to Section 1125**

**of the Bankruptcy Code**

21.    The Debtor seeks an order of the Court approving the Disclosure Statement

pursuant to section 1125(a)(1) of the Bankruptcy Code. The information contained in the

Disclosure Statement is complete and accurate to the best of the Debtor's knowledge, information,

and belief.

22.    The Disclosure Statement provides members of Voting Classes with adequate

information to make an informed judgment regarding whether to vote to accept or reject the Plan.

Accordingly, the Debtor requests that the Court approve the Disclosure Statement as containing

"adequate information," as defined in section 1125(a) of the Bankruptcy Code.

23.    In accordance with section 1125(e) of the Bankruptcy Code, the Debtor is also

requesting that the Court order that any person who solicits acceptance(s) of the Plan, in

accordance with the procedures set forth in this Motion, shall not be liable on account of such

solicitation or participation, for violation of any applicable law, rule, or regulation governing

solicitation or acceptance of a plan, or the offer, issuance, sale, or purchase of securities.

**B.**    **Tabulation of Votes**

24.    To accurately calculate votes cast for or against the Plan, the Debtor proposes the

following procedures for tabulating votes in accordance with the Bankruptcy Code and

Bankruptcy Rules:

a.    The Debtor proposes that the amount of a Claim for voting purposes should be

the Claim amount as listed in the Debtor's Schedules if such Claim is listed therein as not

contingent, not unliquidated, and not disputed and no proof of Claim has been timely filed (see

Bankruptcy Rule 3003(b)(1)). If a proof of Claim in a specified liquidated amount has been

timely filed and is neither the subject of an objection to Claim filed before the confirmation

hearing (the "Confirmation Hearing"), nor has been disallowed prior to the Confirmation Hearing

(see section 502(a) of the Bankruptcy Code and Bankruptcy Rule 3002), nor designated as a

1  Disputed Claim in the Plan or the Disclosure Statement, the amount of the Claim for voting

2  purposes shall be such specified liquidated amount, unless a different amount has been

3  temporarily allowed by the Court for voting purposes after notice and a hearing in accordance with

4  Bankruptcy Rule 3018(a), in which event the Claim should be in such amount for voting purposes;

5        b.    If a creditor submits a ballot for a Claim for which a proof of Claim has not

6  been filed timely, or which is listed on the Debtor's Schedules as contingent, unliquidated, or

7  disputed, or against which an objection has been timely filed and is not resolved or which is

8  designated in the Plan or the Disclosure Statement as a Disputed Claim, then such ballot will not

9  be counted in accordance with Bankruptcy Rule 3018, unless the Court temporarily allows the

10  Claim for voting purposes in accordance with such Rule;

11        c.    If a creditor casts more than one ballot voting the same Claim before the last

12  day for submitting ballots, the last ballot received prior to the deadline for submitting ballots shall

13  supersede any prior ballot(s), even if the dollar amount of the earlier Claim was greater;

14        d.    Votes cast by a creditor pursuant to a ballot that is not signed or is not timely

15  received shall not be counted; and

16        e.    Signed ballots that are timely received but which do not indicate any vote on

17  the Plan shall be treated as a vote to accept the Plan.

18        25.    The Debtor requests that the Court designate the Debtor's insolvency counsel to

19  tabulate the ballots on the Plan and prepare the ballot summary to be submitted prior to the hearing

20  on the confirmation of the Plan (the "Ballot Summary"). The address for this purpose is:

21      Nancy Lockwood, Paralegal
    The Lobel Firm, LLP
22      840 Newport Center Drive, Suite 750
23      Newport Beach, California 92660
    Fax: (949) 999-2860
24

25        26.    This Motion has been served on the U.S. Trustee, the Creditors' Committee, and

26  the Debtor's secured lenders. Notice of the hearing on approval of the Disclosure Statement has

27  been mailed to all creditors in accordance with Bankruptcy Rule 2002.

28

**C.**     **Procedures for Determining Cure Amounts for Assumed Contracts and Leases**

27.     Subject to the following and pursuant to Article IX of the Plan, the contracts and leases identified in Exhibit "1" to the Plan will be assumed and vest in the Reorganized Debtor as of the Effective Date (the "Assumed Contracts and Leases"). The Debtor does not believe that there are any existing defaults under the Assumed Contracts and Leases. As a result, the Assumed Contracts and Leases identified in Exhibit "1" to the Plan may be assumed without a "cure" payment (those Assumed Contracts and Leases shall be deemed to require a zero dollar ($0.00) cure amount). The assumption of the Assumed Contracts and Leases with no cure payment shall be deemed to be a full and final satisfaction of all obligations to cure defaults and compensate the parties to the Assumed Leases and Contracts for any pecuniary losses arising under such Assumed Contracts and Leases pursuant to section 365(b)(1) of the Bankruptcy Code.

28.     The Debtor requests that the Court establish the following procedures to permit parties to the Assumed Contracts and Leases to challenge the Debtor's calculation of the required cure amounts to be paid on the Effective Date:

a.     The Debtor will serve upon each of the parties to the Assumed Contracts and Leases a notice of cure amount (the "Cure Notice"), which specifies the dollar amount of the proposed cure payment to be paid upon assumption of the contract or lease (the "Cure Amount"), and describes the deadline and procedure for objecting to the Cure Amount, if disputed;

b.     The Debtor requests that the Court fix August 15, 2012 (7 days after the date of the hearing at which the Disclosure Statement is approved) as the last day to mail the Cure Notices, and set September 5, 2012 (28 days after the date of the hearing at which the Disclosure Statement is approved) as the deadline to file and serve any objections to the Cure Amount;

c.     Objections to the Cure Amount must be in writing and must set forth in detail the specific objection and the grounds for the objection, and what Cure Amount the objecting party believes is required. Any objection to the Cure Amount must be accompanied by appropriate supporting documentation and evidence demonstrating the calculation of the Cure Amount as claimed;

1         d.  If parties to the Assumed Contracts and Leases fail to timely object to the Cure

2    Amounts, such parties shall be deemed to have consented to the assumption of the Assumed

3    Contracts and Leases and shall be irrevocably bound to the assumption of the Assumed Contracts

4    and Leases and to the Cure Amount set forth in the Cure Notice, and will be barred and

5    permanently enjoined from asserting any amounts in excess of the Cure Amounts as a condition to

6    assumption of the Assumed Contracts and Leases;

7         e.  If a timely objection to a Cure Amount is filed, the Court shall determine the

8    appropriate Cure Amount at a hearing to be set by the Court prior to or at the Confirmation

9    Hearing; and

10        f.  The Debtor reserves the right to modify the Plan at any time prior to the Effective

11   Date to reject any of the Assumed Contracts and Leases in the event that the Court increases the

12   Cure Amount for a particular contract or lease above that specified in the Cure Notice, or the

13   Debtor believes, in its discretion, that assumption is undesirable, in which case, the parties to the

14   rejected Assumed Contracts and Leases may file a rejection claim.

15   **D.    Fixing Certain Dates**

16       29.    Pursuant to Bankruptcy Rules 2002(b) and 3020(b)(2), at least 28 days' notice must

17   be given by mail to all creditors and equity interest holders of the time fixed for filing objections

18   to, and the hearing to consider confirmation of, a plan of reorganization.

19       30.    In order for the solicitation, voting, and confirmation processes to proceed in a

20   timely manner, the Debtor requests that the Court fix the following dates: (a) the last day for

21   transmittal of the Solicitation Packages and Confirmation Hearing Notices to those parties entitled

22   to receive them and for publication of the Confirmation Hearing Notices; (b) the last day for

23   receipt by the Debtor's insolvency counsel of ballots accepting or rejecting the Plan; (c) the date

24   for the hearing on the confirmation of the Plan; (d) the last date for filing a memorandum in

25   support of confirmation; (e) the date on which the Ballot Summary must be filed; and (f) the

26   deadlines to file objections to confirmation of the Plan and responses thereto.  A proposed timeline

27   indicating the intervals between the requested deadlines is attached hereto as Exhibit "1."

28

MOTION FOR ORDER APPROVING DISCLOSURE
STATEMENT, ETC.                              -11-

1

**Date to Transmit Notice and Solicitation Packages**

2      31.    The Debtor requests that the Court fix August 15, 2012 (7 days after the date of the

3    hearing at which the Disclosure Statement is approved) as the last day to mail the Solicitation

4    Packages and notice of the Confirmation Hearing to those entities entitled to receive them.

5

**Last Day to Vote**

6      32.    Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure

7    statement, the court shall fix a time within which the holders of claims and interests may accept or

8    reject a plan . . . ." The Debtor hereby requests that the Court fix September 5, 2012 (28 days after

9    the date of the hearing at which the Disclosure Statement is approved) as the last day and time for

10   all creditors in Voting Classes to deliver ballots to the Debtor's insolvency counsel to accept or

11   reject the Plan.  Ballots must be completed and returned to, and actually received by, the Debtor's

12   insolvency counsel on or before such date and time as is set by the Court in order to be valid and

13   counted.

14     33.    The Debtor submits that these proposed deadlines will afford voting creditors

15   adequate time to vote, and will permit enough time to tabulate the ballots and prepare the Ballot

16   Summary for filing with the Court before the Confirmation Hearing.

17

**Last Day to Object to Confirmation**

18     34.    Bankruptcy Rule 3020(b) provides that, within a time specified by the Court,

19   objections to plan confirmation must be filed with the Court and served on the debtor, the trustee,

20   any committee appointed under the Bankruptcy Code, and any other entity designated by the

21   Court.  The Debtor requests that the Court fix September 5, 2012 (28 days after the date of the

22   hearing at which the Disclosure Statement is approved) as the last day to file objections to

23   confirmation of the Plan with the Court, and the last date by which such objections may be

24   received by the service parties listed below.  The Debtor will reply to any timely filed and served

25   objections to confirmation in the Confirmation Memorandum (defined below) at least seven (7)

26   days prior to the scheduled Confirmation Hearing.

27     35.    Bankruptcy Rule 3020(b)(1) provides that the Court may designate the parties upon

28   whom any objections to confirmation must be served.  The Debtor requests that the Court

1   designate that objections be served only on the U.S. Trustee, the Creditors' Committee, and

2   counsel for the Debtor, and that the Confirmation Memorandum to be filed by the Debtor be

3   served on the Creditors' Committee, the U.S. Trustee and any objecting party.

4                    **Confirmation Hearing and Memorandum**

5   36.   Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure

6   statement, the court shall . . . fix a date for the hearing on confirmation." The Debtor hereby

7   requests that the Court fix a date and time approximately forty-nine (49) days after the date of the

8   hearing at which the Disclosure Statement is approved as the date and time for the hearing on

9   confirmation of the Plan (September 26, 2012). The Debtor also requests that the Court fix a date

10  approximately forty-two (42) days after the date of the hearing at which the Disclosure Statement

11  is approved (estimated to be September 19, 2012) as the last date to file a memorandum in support

12  of confirmation, a ballot summary, and declarations in support thereof (the "Confirmation

13  Memorandum").

14  37.   The deadlines and procedures relating to the last day for transmittal of the

15  Solicitation Packages and Confirmation Hearing Notices, the deadlines to submit ballots, the last

16  day to file and deliver objections to confirmation of the Plan and responses thereto, and the date

17  for hearing on confirmation of the Plan, are fair, reasonable, and authorized by applicable

18  provisions of the Bankruptcy Code and the Bankruptcy Rules. Accordingly, they should be

19  approved.

20  38.   The Debtor further requests that the following procedures be established for the

21  admissibility of any objections or evidence in connection with the Confirmation Hearing:

22  a.   An objection to confirmation of the Plan must be in writing and accompanied

23  by a memorandum of points and authorities and specify in detail: (i) the name and address of the

24  entity filing the objection; (ii) the grounds of such objection; (iii) the evidentiary support for the

25  objection in the form of affidavits under oath or declarations submitted under penalty of perjury;

26  and (iv) the amount of the objector's claims or such other grounds that give the objector standing

27  to assert any objection to the Plan;

28

1      b.     Any objection not timely filed and served shall be deemed to be waived and to

2    be a consent to the Court's entry of an order confirming the Plan;

3      c.     Any evidence that is not timely filed and served as provided above will be

4    stricken from the record and will not be considered in determining contested matters at the

5    Confirmation Hearing; and

6      d.     All declarants or affiants must appear and be available, without need for

7    subpoena, for cross-examination at the Confirmation Hearing (except for declarants making

8    declarations of service and the ballot tabulation, unless such testimony is put in issue). The

9    testimony of any declarant or affiant who is not present himself or herself for cross-examination at

10   the Confirmation Hearing will be stricken from the record and will not be considered in

11   determining contested matters at the Confirmation Hearing, unless such party's appearance has

12   been excused by order of the Bankruptcy Court.

13   **E.     Bar Date for Administrative Expenses and Final Fee Applications**

14           39.    The Plan provides that all applications for compensation of Professionals for

15   services rendered and for reimbursement of expenses incurred on or before the Confirmation Date,

16   and any other request for compensation by any Entity for making a substantial contribution in the

17   cases, and all other requests for payment of Administrative Claims incurred before the

18   Confirmation Date under sections 507(a)(2) or 503(b) of the Code (except only for Claims under

19   28 U.S.C. § 1930) shall be filed no later than thirty (30) days after the Effective Date. Any such

20   Claim not filed within this deadline shall be forever barred and the Debtor and the Reorganized

21   Debtor shall be discharged of any obligation on such Claim; and any Creditor who is required to

22   file a request for payment of such Claim and who does not file such request by the applicable bar

23   date shall be forever barred from asserting such Claim against the Estate, the Reorganized Debtor,

24   or any of their respective properties. The Allowed Administrative Claims of Professionals shall be

25   paid in accordance with section 1129(a)(9)(A) of the Code by the Debtor or the Reorganized

26   Debtor, as applicable. Any objections to Administrative Claims must be filed within thirty (30)

27   days after the deadline for filing an Administrative Claim, unless such deadline is extended by the

28

1  Bankruptcy Court. If an objection to an Administrative Claim is not timely filed in accordance

2  with this paragraph, such Administrative Claim shall be deemed to be an Allowed Claim.

3      40.    The Plan provides that any Administrative Claim arising on or after the

4  Confirmation Date shall be asserted against the Reorganized Debtor and shall not be dealt with

5  under the Plan.

6                                   **III.**

7                               **ARGUMENT**

8  **A.    The Disclosure Statement Should be Approved Because it Contains Adequate**

9      **Information for the Members of the Voting Classes to Make an Informed Judgment**

10      **on the Plan**

11      The Debtor's Disclosure Statement contains "adequate information" as defined by section

12  1125 of the Bankruptcy Code. Adequate information is defined in that section as:

13              [i]nformation of a kind, and in sufficient detail, as far as is
              reasonably practicable in light of the nature and history of the debtor
14              and the condition of the debtor's books and records, that would
              enable a hypothetical reasonable investor typical of holders of
15              claims or interests of the relevant class to make an informed
              judgment about the plan, but adequate information need not include
16              such information about any other possible or proposed plan . . . .
17

18  11 U.S.C. § 1125(a)(1).

19      The Fifth Circuit Court of Appeals stated in In re Texas Extrusion Corp., 844 F.2d 1142,

20  1157 (5th Cir.), cert. denied, 488 U.S. 926 (1988), that the determination of what meets the

21  statutory definition of adequate information is "subjective and made on a case by case basis . . .

22  [and] . . . is largely within the discretion of the Court." Accord Menard-Sanford v. Mabey (In re

23  A.H. Robins Co.), 880 F.2d 694, 696 (4th Cir.) cert. denied 493 U.S. 959 (1989); Prudential Ins.

24  Co. v. Monnier (In re Monnier Bros.), 755 F.2d 1336, 1341 (8th Cir. 1985). Generally, the

25  disclosure statement should contain pertinent information bearing on the success or failure of the

26  proposed plan. In re Stanley Hotel, Inc., 13 B.R. 926, 929 (Bankr. D. Colo. 1981).

27      In construing section 1125 of the Bankruptcy Code, courts have developed a list of the

28  types of information, disclosure of which "may be mandatory, under the facts and circumstances

1   of a particular case, to meet the statutory requirement of adequate information." In re Metrocraft

2   Pub. Servs., Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). In Metrocraft, the Court delineated

3   the types of information that courts have required to be contained in the disclosure statement.

4   Such information includes:

> (1) the events which led to the filing of a bankruptcy petition; (2) a
> description of the available assets and their value; (3) the anticipated
> future of the company; (4) the source of information stated in the
> disclosure statement; (5) a disclaimer; (6) the present condition of
> the debtor while in Chapter 11; (7) the scheduled claims; (8) the
> estimated return to creditors under a Chapter 7 liquidation; (9) the
> accounting method utilized to produce financial information and the
> name of the accountants responsible for such information; (10) the
> future management of the debtor; (11) the Chapter 11 plan or a
> summary thereof; (12) the estimated administrative expenses,
> including attorneys' and accountants' fees; (13) the collectability of
> accounts receivable; (14) financial information, data, valuations or
> projections relevant to the creditors' decision to accept or reject the
> Chapter 11 plan; (15) information relevant to the risks posed to
> creditors under the plan; (16) the actual or projected realizable value
> from recovery of preferential or otherwise voidable transfers;
> (17) litigation likely to arise in a nonbankruptcy context; (18) tax
> attributes of the debtor; and (19) the relationship of the debtor with
> affiliates.

17   Id.; see also In re Monroe Well Servs., Inc., 80 B.R. 324, 331 (Bankr. E.D. Pa. 1987) (citing

18   Metrocraft factors); In re Reilly, 71 B.R. 132, 134 (Bankr. D. Mont. 1987) (same).

19       The information contained in the Disclosure Statement comports with the construction of

20   "adequate information" adopted by these courts. The Disclosure Statement contains, among other

21   things, the following items referred to in Metrocraft:

22           1.      A description of the events leading to the filing of the bankruptcy cases:

23   Section II.C;

24           2.      Descriptions of the Debtor's assets and their values: Sections II.B and

25   VI.B.4 and the Liquidation Analysis (Exhibit "3");

26           3.      Information concerning the anticipated future of the Debtor: Section III.F;

27           4.      The source of information stated in the Disclosure Statement: Section I.E;

28           5.      A disclaimer: pages 1-2, Sections I.E and VII.E;

1    6.    The present condition of the Debtor while in chapter 11: Section II.E.2;

2    7.    The estimated return to creditors and equity holders in a hypothetical

3    chapter 7 liquidation: Section VI.B.4;

4    8.    The accounting methods used to produce financial information and the

5    persons responsible for such information: Section IV.A;

6    9.    The future management of the Debtor: Section III.F.5;

7    10.    A copy of the Plan and a detailed summary thereof: Exhibit "1," Section III;

8    11.    The estimated administrative expenses, including attorneys' and

9    accountants' fees: Section III.A;

10    12.    Financial information, data, valuations, or projections relevant to a decision

11    to accept or reject the Plan: Sections IV, VI.B.4 and 5 and the Liquidation Analysis (Exhibit "3");

12    13.    Information relevant to the risks posed to creditors under the Plan: Section

13    V; and

14    14.    A discussion of the tax consequences of the Plan to the Debtor, creditors

15    and equity holders: Section VIII.

16    In addition to the disclosure items set out in <u>Metrocraft</u>, the Debtor incorporated the

17    following significant items in the Disclosure Statement which the Debtor believes are appropriate

18    in providing adequate information:

19    1.    A discussion of voting prerequisites and procedures: Sections I.C, I.D and

20    VI;

21    2.    A discussion of certain requirements for confirmation contained in the

22    Bankruptcy Code: Section VI.

23    In addition to the foregoing, the proposed Disclosure Statement contains, in the

24    sections designated below, the following information required by the Guide to Preparation of

25    Disclosure Statements, issued by the U.S. Trustee:

26    1.    Purpose of Disclosure Statement: Section I.B;

27    2.    Description of the Debtor: Section II.A;

28    3.    Management: Sections II.A and II.F.5;

MOTION FOR ORDER APPROVING DISCLOSURE
STATEMENT, ETC.                                        -17-

1          4.      Description of the Plan: Section III;

2          5.      Means of performing the Plan: Section III.F;

3          6.      Cash requirements and administrative expenses: Section VI.B.3;

4          7.      Liquidation analysis: Sections VI.B.4 and Exhibit "3;"

5          8.      Legal Proceedings: Sections I.B.2.e, II.C, II.D.4 and II.E;

6          9.      Tax analysis: Section VIII;

7          10.     Vote required for approval: Sections I.C, I.D and VI; and

8          11.     Post-petition events: Section II.E.

9      Thus, the Disclosure Statement contains adequate information for a creditor to make an

10 informed judgment when voting on the Plan.  Accordingly, the Court should find that the

11 Disclosure Statement contains "adequate information" as defined in section 1125(a)(1) of the

12 Bankruptcy Code.  The Disclosure Statement represents the Debtor's best efforts to provide

13 sufficient information to creditors in compliance with the applicable provisions of the Bankruptcy

14 Code, and has been proposed in good faith.  Accordingly, the Court should also grant the

15 protections afforded by section 1125(e) of the Bankruptcy Code.

16 **B.**    **The Procedures for Tabulating Votes are in Accordance with Applicable Provisions of**

17       **the Bankruptcy Code and Bankruptcy Rules**

18      Generally, only a holder of an allowed claim or allowed interest is entitled to vote to accept

19 or reject a plan.  See 11 U.S.C. § 1126(a).  An unsecured creditor or an equity security holder must

20 file a proof of claim or interest in accordance with Bankruptcy Rule 3002 for such claim or

21 interest to be allowed, with certain exceptions.  See 11 U.S.C. §§ 501 and 502; Fed. R. Bankr. P.

22 1019(3), 3003, 3004, and 3005.  One noted exception to this general rule covers claims listed on a

23 debtor's schedule of liabilities.  See 11 U.S.C. § 1111(a); Fed. R. Bankr. P. 3003(b).  In

24 accordance with this framework, the Court should direct the Debtor to utilize the procedures for

25 tabulating votes described above.  The proposed procedures for tabulating votes on the Plan are in

26 accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

27

28

1  **C.    The Requisite Dates and Procedures for the Solicitation, Voting, and Confirmation**

2  **Processes are Fair, Reasonable, and Authorized by Applicable Provisions of the**

3  **Bankruptcy Rules**

4    In this Motion, the Debtor has asked the Court to set certain dates and procedures in

5  connection with the solicitation, voting, and confirmation process for the Plan.  These dates

6  include: (1) the last day for transmittal of the Solicitation Packages and notice of the Confirmation

7  Hearing to the entities entitled to receive them; (2) the last day for receipt of ballots to accept or

8  reject the Plan; (3) the date for the hearing on confirmation of the Plan; (4) the last day for filing a

9  memorandum in support of confirmation and Ballot Summary; (5) the last day to file objections to

10  confirmation of the Plan and responses thereto; and (6) deadlines and procedures necessary to

11  determine the appropriate Cure Amounts under contracts and leases to be assumed under the Plan.

12  The Debtor believes that the requested dates and procedures are fair and reasonable, and are

13  authorized by the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  See,

14  e.g., Fed. R. Bankr. P. 3017(c) and (d), 3018(a), and 3020(b)(1).  Accordingly, the Court should

15  approve the requested dates and procedures in connection with the solicitation, voting and

16  confirmation process.

17                                    **IV.**

18                                **CONCLUSION**

19    For the foregoing reasons and based upon the authorities set forth above, the Debtor

20  respectfully submits that the Court should grant the Motion in its entirety.

21  DATED: July 3, 2012                         THE LOBEL FIRM, LLP

22

23                                          By: _____

24                                              William N. Lobel
                                                Mike D. Neue
25                                              Attorneys for Debtor
                                                and Debtor-in-Possession
26

27

28

MOTION FOR ORDER APPROVING DISCLOSURE
STATEMENT, ETC.                    -19-

# EXHIBIT "1"



| In re: | | CHAPTER: 11 |
|---|---|---|
| **Dale Alfred Williams** | | CASE NUMBER: **2:12-bk-15652 RK** |
| | Debtor(s). | |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.  Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**840 Newport Center Drive, Suite 750, Newport Beach, CA 92660**

A true and correct copy of the foregoing document described as **MOTION FOR ORDER: (1) APPROVING DISCLOSURE STATEMENT; (2) APPROVING NOTICE PROCEDURES; (3) ESTABLISHING CURE PROCEDURES; (4) ESTABLISHING CONFIRMATION PROCEDURES AND DEADLINES; AND (5) ESTABLISHING CERTAIN BAR DATES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was  served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 3, 2012** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On **July 3, 2012** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**The Honorable Robert Kwan (Via Overnight Mail)**
United States Bankruptcy Court
Los Angeles Division
255 E. Temple Street, Suite 1682
Los Angeles, CA  90012

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7/3/2012 | **Nancy Lockwood** | /s/ Nancy Lockwood |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | CHAPTER 11 |
|---|---|
| **Dale Alfred Williams** | |
| Debtor(s). | CASE NUMBER **2:12-bk-15652 RK** |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- **Sharon R Biederman** akiba1708@yahoo.com
- **Sarah C Boone** sboone@marshackhays.com, ecfmarshackhays@gmail.com
- **J Scott Bovitz** bovitz@bovitz-spitzer.com
- **David W Brody** dbrody@brody-law.com, bknotice@brody-law.com
- **Joseph H Catmull** jcatmull@pwbonline.com
- **Meredeth Edelman** meredith.edelman@dlapiper.com
- **David K Eldan** malvarado@pmco.com, rpinal@pmcos.com, calendar@pmcos.com
- **D Edward Hays** ehays@marshackhays.com, ecfmarshackhays@gmail.com
- **Mark S Horoupian** mhoroupian@sulmeyerlaw.com, kfox@sulmeyerlaw.com
- **Rika Kido** rkido@shbllp.com
- **Alvin Mar** alvin.mar@usdoj.gov
- **Mike Neue** mneue@thelobelfirm.com; jmattiace@thelobelfirm.com; nlockwood@thelobelfirm.com
- **Robert E Opera** ropera@winthropcouchot.com, sconnor@winthropcouchot.com, pj@winthropcouchot.com
- **R G Pagter** gibson@oagterandmiller.com, pandm@pagterandmiller.com, pagterandmiller@yahoo.com
- **Kurt Ramlo** kurt.ramlo@dlapiper.com; evelyn.rodriguez@dlapiper.com
- **Leonard M Shulman** lshulman@shbllp.com
- **Ramesh Singh** claims@recoverycorp.com
- **Adam M Starr** starra@gtlaw.com
- **James E Till** jtill@thelobelfirm.com; jmattiace@thelobelfirm.com; nlockwood@thelobelfirm.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Gilbert B Weisman** notices@becket-lee.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                   **F 9013-3.1**