FILED & ENTERED

APR 08 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning   DEPUTY CLERK

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | No. 2:12-bk-15652-RK |
| DALE ALFRED WILLIAMS, | Chapter 11 |
| Debtor. | **RULINGS ON ISSUES OF LAW LITIGATED IN PHASE 1 OF TRIAL** |

In their Joint Pretrial Stipulation, the parties listed the issues of law that they stipulated the court should rule upon during Phase 1 of the trial in this adversary proceeding, which Debtor listed to be litigated in Phase 1 and which the United States of America listed to be litigated in Phase 1. *Joint Pretrial Stipulation,* filed on March 31, 2017, ECF 1329. As set forth below, the court states its rulings on these issues of law.

**A.**    <u>**Issues Litigated During Phase 1 of Trial**</u>

1.    Before trial, the parties stipulated to bifurcate the trial into two separate phases. *See Joint Pre-Trial Stipulation*, ECF 1329 at 8-10, ¶ ¶  1-10.

2.    For Phase 1 of trial, the parties stipulated to limit the issues to litigate to the following:

a.    <u>Qualified Real Estate Professional ("QREP") Election</u>

(i)    Whether Debtor's Claim Objection and the Department of Justice's defense of the United States in connection with the Claim Objection terminated the Internal Revenue Service ("IRS")'s authority to grant relief under Revenue Procedure ("Rev. Proc."). 2011-34.  *Joint Pre-Trial Stipulation*, ECF 1329 at 8, ¶ 1(A).

**Ruling:** The answer is no.  Debtor filed a late election under 26 C.F.R. § 1.469-9(g) to treat all interests in rental real estate as a single real estate activity on his amended federal income tax return for tax year 2010, which is not a tax liability at issue in the pending litigation.  The IRS had the authority to grant relief under Rev. Proc. 2011-34 to grant an extension of time to file a late election under 26 C.F.R. § 1.469-9(g), which it did in its letter dated October 9, 2014 (Joint Exhibit 101), granting such relief, because the income tax liability for tax year 2010 was not one which had been referred to the Department of Justice for purposes of 26 U.S.C. § 7122(a).   While 26 U.S.C. § 7122 provides that the IRS "may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense" and that the Justice Department may compromise such liability after such reference, Debtor's late election pursuant to Rev. Proc. 2011-34 was made with respect to his income tax liability for tax year 2010, which was not a liability involved in this case as referred to the Justice Department in defense of the IRS's claim for tax year 2006 and generally related to tax liabilities not in suit, that is, beginning in tax year 1994 when the election should have been made and through 2010.

The argument of the United States is that that the IRS lacked discretion to grant relief under Rev. Proc. 2011-34 because the late election under Rev. Proc. 2011-34 has an impact on the litigation of the referred tax

-2-

liability for tax year 2006, and this would effectuate a "compromise" of a referred civil case.  However, it cannot be the case that the IRS could not grant relief on a non-referred tax liability, which is the case here for the tax liabilities not in suit, that is, the income tax liabilities other than 2006 and 2008.  *Brubaker v. United States,* 342 F.2d 655, 662 (7th Cir. 1965) (the IRS has authority to compromise tax liabilities not referred to the Justice Department, which lacks such authority unless there is a referral).  The IRS's granting of Debtor's request for a late election under 26 C.F.R. § 1.469-9(g) pursuant to Rev. Proc. 2011-34 does not work a "compromise" of Debtor's 2006 and 2008 income tax liabilities (which were referred to the Justice Department in this civil case in defense of the IRS claim objected to by Debtor) within the meaning of 26 U.S.C. § 7122.  The granting of administrative relief under Rev. Proc. 2011-34 simply allows Debtor to rely upon the revenue procedure available to all taxpayers to make a late election as any other taxpayer and does not determine his tax liability for tax years 2006 and 2008, which the United States through the Justice Department may still litigate.  *Estate of Shapiro v. Commissioner,*  111 F.3d 1010, 1018 (2nd Cir. 1997) (citing Rev. Proc. 89-14, stating that taxpayers may rely upon IRS revenue procedures published in the Internal Revenue Bulletin in determining the tax treatment of their transactions).

(ii)    If the IRS's authority to grant relief pursuant to Rev. Proc. 2011-34 is determined to be terminated, whether the Bankruptcy Court has jurisdiction to grant such relief under 11 U.S.C. § 505.  *Joint Pre-Trial Stipulation*, ECF 1329 at 8, ¶  1(B).

**Ruling:**  The court need not rule upon this issue of jurisdiction to grant relief pursuant to Rev. Proc. 2011-34 under 11 U.S.C. § 505 because as stated above, the court has determined that the IRS's authority to grant relief to extend time for Debtor to file a late election under 26 C.F.R. § 1.469-9(g)

-3-

1  pursuant to Rev. Proc. 2011-34 was not terminated by a referral to the

2  Department of Justice.  The court agrees on this issue with Debtor who

3  argues, distinguishing *1900 M Restaurant Associates v. United States,* 319

4  B.R. 302 (Bankr. D. D.C. 2005), "the IRS has granted relief, and the

5  Government asks that the court undo it."  *Debtor's Proposed Findings of*

6  *Fact and Conclusions of Law,* ECF 1360 at 58 (document page 48).

7      (iii)      Whether Debtor satisfied the requirements for relief under Rev. Proc.

8  2011-34 or is otherwise entitled to a QREP election.  *Joint Pre-Trial Stipulation*,

9  ECF 1329 at 8, ¶ 1(C).

10  **Ruling:**  While the court determines that Debtor is entitled to make a late

11  QREP election based on the IRS's letter informing Debtor that it granted his

12  retroactive election pursuant to Rev. Proc. 2011-34, the revenue procedure

13  expressly makes clear that this relief does not determine Debtor's eligibility

14  for treatment as a QREP, and as the court has stated above, the United

15  States through the Department of Justice may litigate the tax liabilities which

16  the IRS referred to the Department of Justice in defense of Debtor's

17  objection to the IRS's proof of claim for income taxes for tax year 2006.  That

18  is, whether Debtor is eligible for treatment as a QREP with respect to the

19  income tax liabilities for tax years 2006 and 2008 at issue in this case is

20  otherwise discussed in these rulings or the findings of fact for Phase 1 of the

21  trial.

22      (iv)      Whether the granting of relief pursuant to Rev. Proc. 2011-34

23  prejudices the interests of the Government and, if so, whether such prejudicial

24  effect caused Debtor to be ineligible for the relief provided for in Rev. Proc. 2011-

25  34.  *Joint Pre-Trial Stipulation*, ECF 1329 at 8, ¶ 1(D).

26  **Ruling:**  Here, as the court has previously stated, the IRS properly exercised

27  its discretion to grant relief to allow Debtor to make a late election pursuant

28  to Rev. Proc. 2011-34, and the IRS's granting of such relief did not prejudice

-4-

the Government's interest, which would have caused Debtor to be ineligible for relief.  It seems that if it were prejudicial, the IRS would not have exercised its discretion to grant relief, which it had the authority to do. Moreover, the United States may litigate the tax liabilities that the IRS referred to the Justice Department in defense of the IRS's claim for income taxes for tax year 2006.

b.    Grouping Activities

(i)    Assuming Debtor is entitled to relief under Rev. Proc. 2011-34 or otherwise establishes that he made a valid QREP Election, which activities of the Rental Real Estate Entities and/or the Management Entities are included in the grouping pursuant to Debtor's QREP Election, and whether the rental real estate activities can be grouped into one or more separate activities.  *Joint Pre-Trial Stipulation*, ECF 1329 at 8-9, ¶  2(A).

**Ruling**:  Whether activities are an appropriate economic unit and so may be treated as a single activity for passive activity loss purposes depends on all of the relevant facts and circumstances, and a taxpayer may use any reasonable method of applying the relevant facts and circumstances in grouping activities.  26 C.F.R. § 1.469-4(c)(2); *see also Stanley v. United States,* 2015 WL 7012853, 2015 U.S. Dist. LEXIS 153166 (W.D. Ark. 2015). Pursuant to 26 C.F.R. § 1.469-4(c)(2), the following five factors are accorded the most weight in determining whether the activities are an appropriate economic unit for measurement of gain or loss for purposes of 26 U.S.C. § 469: (i) similarities and differences in types of business; (ii) the extent of common control; (iii) the extent of common management; (iv) geographical location; and (v) interdependencies between or among the activities.  26 C.F.R. § 1.469-4(c)(2).  The court determines that the activities of the Rental Real Estate Entities and the activities of the Management Entities and Leasco Aviation, to the extent their activities support the activities of the

-5-

Rental Real Estate Entities, are an appropriate economic unit for purposes of 26 U.S.C. § 469 as alleged by Debtor in his fifth and seventh claims for relief in his First Amended and Restated Complaint for Declaratory Relief and Disallowance of Claim, filed on April 25, 2014, ECF 926, based on the factors of common control, common management, interdependencies between or among activities, and the similarities of types of business.  The evidence shows that all of these entities are commonly owned by Debtor as majority owner of the entities, that the entities are under common control through the management entities, which are majority owned by Debtor and supervised by him as chief executive officer, that the entities have interdependencies among them due to the common ownership and control through Debtor's executive management as majority owner and chief executive officer of these entities, and that the types of businesses are sufficiently similar since the entities are in the business of rental real estate or supporting the business of rental real estate.

(ii)    For purposes of including any allowed grouping subject to the QREP Election, whether the activities of any Management Entities qualify for the management exception contained in 26 C.F.R. § 1.469-9(e)(3).  *Joint Pre-Trial Stipulation*, ECF 1329 at 9, ¶  2(B).

**Ruling**:  Debtor's work performed in the management activity of the Management Entities may qualify for the management exception of 26 C.F.R. § 1.469-9(e)(3) in determining whether he materially participated in the rental real estate activity of the Rental Real Estate Entities.  *See Stanley v. United States,* 2015 WL 7012853, 2015 U.S. Dist. LEXIS 153166 (W.D. Ark. 2015).

(iii)    Whether any of Leasco Aviation's activities can be grouped with the activities of the Management Entities and/or the Rental Real Estate Entities.  *Joint Pre-Trial Stipulation*, ECF 1329 at 9, ¶  2(C).

**RULINGS ON PHASE 1 LEGAL ISSUES**

**Ruling**:  Yes, as discussed above, Leasco Aviation's activities may be grouped with the activities of the Management Entities and/or the Rental Real Estate Entities to the extent that such activities are shown to have been performed in support of the activities of Rental Real Estate Entities.  Debtor's testimony at trial was that the primary purpose of Leasco Aviation was to transport him through its two airplanes in his management of the Rental Real Estate Entities, and this testimony is supported by the trial testimony of Debtor's executive assistant, Laureen (Lori) Brenning, who was also Leasco Management's controller, and in these capacities communicated with Debtor on a daily basis.  Aside from providing transportation support for Debtor in his management of the Rental Real Estate Entities, Leasco Aviation, however, did not own rental real estate itself and had involvement in non-rental real estate activities through its ownership of oil and gas interests, which activities may not be grouped with Debtor's rental real estate activities.  Whether the net operating losses from Leasco Aviation from the operation of the two airplanes in transporting Debtor are properly deductible as trade or business expenses pursuant to 26 U.S.C. § 162 is a Phase 2 trial issue.

(iv)       For each applicable year, whether the omission of the rental real estate activities of an entity from the rental real estate activities reported on Schedule E – Reconciliation for Real Estate Professionals requires exclusion of the omitted activities from the grouping pursuant to any relief afforded Debtor under Rev. Proc. 2011-34 or to the extent Debtor otherwise establishes that he made a valid QREP Election. *Joint Pre-Trial Stipulation*, ECF 1329 at 9, ¶  2(D).

**Ruling**:  The answer is no.  Although 26 C.F.R. § 1.469-4(e) provides that taxpayers must comply with disclosure requirements that the IRS may prescribe with respect to their original groupings of activities and the addition and disposition of specific activities within those chosen groupings in subsequent taxable years,

1    the IRS did not prescribe any such disclosure requirements until January 25, 2010

2    when it issued Revenue Procedure 2010-13, prescribing such requirements.  26

3    C.F.R. § 1.469-4(e)(1); Rev. Proc. 2010-13.  Moreover, the disclosure requirements

4    for a QREP election are contained in 26 C.F.R. § 1.469-9(g), which do not contain

5    a requirement that a taxpayer list each any every activity or entity holding rental

6    real estate activity for a valid QREP election.  Thus, the court agrees with Debtor

7    that contrary to the contention of the United States, Debtor was not required to

8    disclose his groupings of activities on his original tax returns for the relevant years

9    (here, 2004 through 2008), including with respect to whether Debtor's reporting of

10   income or loss on a specific line within his Form 1040 does or does not constitute

11   grouping for purposes of 26 USC § 469(c)(7).  *See Stanley v. United States*, 2015

12   WL 7012853, 2015 U.S. Dist. LEXIS 153166 (W.D. Ark. 2015) (permitting treatment

13   of particular items differently than as originally reported on taxpayer's originally filed

14   return).  Accordingly, the omission of the rental real estate activities of an entity

15   from the rental real estate activities reported on Schedule E – Reconciliation for

16   Real Estate Professionals on Debtor's original tax returns for the relevant years

17   does not require exclusion of the omitted activities from the grouping pursuant to

18   any relief afforded Debtor under Rev. Proc. 2011-34 or to the extent Debtor

19   otherwise establishes that he made a valid QREP Election.

20   c.    Qualified Real Estate Professional

21        (i)    The parties stipulated to address the material participation

22   requirement of 26 U.S.C § 469, including 26 U.S.C § 469(c)(7)(B) in the

23   subsequent phase(s) of the trial.  *Joint Pre-Trial Stipulation*, ECF 1329 at 9, ¶ 3.[1]

24

25

26

27

28

---

[1] In the *Joint Pre-Trial Stipulation*, the parties agreed that Phase 1 of the trial would include a determination about whether Debtor's participation in an activity, including real estate trade or business activities, may be established by Debtor's identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment records, calendars, or narrative summaries and therefore satisfies the "reasonable means" requirement set forth in 26 CFR § 1.469-5T.  *See Joint Pre-Trial Stipulation*, ECF 1329 at 9, ¶ 3.  Having heard and considered the evidence during Phase 1 of the trial, however, the court finds that the evidence is inconclusive regarding whether Debtor has shown by a preponderance of the evidence that he has satisfied certain thresholds in the number of hours during the year that he spent in the activities of the rental real estate entities and thus,

(Continued...)

**RULINGS ON PHASE 1 LEGAL ISSUES**

1    **Ruling**:  Based on the stipulation of the parties, the court will defer and

2    address the issue of whether Debtor met the material participation

3    requirement of 26 U.S.C. § 469 to Phase 2 of the trial.

4    d.    <u>Basis of Claim</u>

5    (i)    Whether (1) this court's jurisdiction pursuant to 11 U.S.C. § 505(a)

6    permits the court to allow a claim based upon adjustments to the 2002 through

7    2005 NOL CFs, 2006 Adjusted AGI, and/or the 2007 NOL to disallow losses

8    stemming from improper grouping, if not yet assessed and no longer assessable,

9    or (2) if this court's jurisdiction pursuant to 11 U.S.C. § 505(a) is limited to

10    determining the amount, if any, that has been validly assessed pursuant to 26

11    U.S.C. § 6213(b)(3).  *Joint Pre-Trial Stipulation*, ECF 1329 at 9, ¶  4(A).

12    **Ruling:**  The dispute between the parties (Debtor, the taxpayer, and the

13    United States on behalf of its agency, the IRS) arises from Debtor's

14    objection, pursuant to Federal Rule of Bankruptcy Procedure 3007, to the

15    proof of claim filed by the IRS pursuant to Federal Rule of Bankruptcy

16    Procedure 3001 for federal income taxes for tax year 2006, which the IRS

17    filed pursuant to Federal Rule of Bankruptcy Procedure 3001 for federal

18    income taxes for tax year 2006 that were assessed on April 5, 2013

19

20    cannot determine whether he has demonstrated material participation in activities of rental real estate entities by "reasonable means" until it assesses Debtor's evidence of material participation under the standards of 26 C.F.R. §1.469-5T in Phase 2 of the trial.  Thus, the court defers ruling on this issue of proof

21    by "reasonable means" and material participation in general until Phase 2.  Debtor in his trial declaration and testimony stated that he worked no less than 1,500 hours in the management entity each year.  *Williams*

22    *Trial Declaration*, ECF 1348, ¶  36. However, at trial, Debtor testified that he only "lightly" reviewed his testimony in his trial declaration, he relied upon his counsel to prepare his trial declaration, and he could not testify that he knew it was accurate, but "assume[d]" it was.  *Williams Testimony, Trial Transcript, June 1,*

23    *2017,* ECF 1355 at 280.  Debtor did not keep contemporaneous time records of the work he performed in his rental real estate management activities, but his longtime executive assistant, Lori Brennan, attempted to reconstruct Debtor's work hours through business records of Debtor's company and her

24    communications and interactions with him after the fact as shown in Joint Exhibits 31 and 32, but Debtor in his trial testimony could not testify that such reconstructions were accurate.  *Williams Testimony, Trial*

25    *Transcript, June 2, 2017,* ECF 1354 at 71-72.  However, it seems that there is evidence indicative of Debtor's material participation in the emails between him and his management company staff as shown in

26    the email correspondence for one month in 2008, January 2008, received as Joint Exhibit 36.  The court determines that since the parties have reserved the issue of material participation for Phase 2, the issue of

27    whether Debtor can demonstrate material participation through the number of hours he worked should also be deferred for final adjudication in Phase 2 due to the inconclusive nature of the evidence before the court in Phase 1.  *See also Moss v. Commissioner*, 135 T.C. 365 (2010); *Harnett v. Commissioner*, T.C. Memo

28    2011-191, *affirmed by unpublished opinion,* 496 Fed. Appx. 963 (11th Cir. 2012); *Hailstock v. Commissioner,* 2016-146; *Fitch v. Commissioner,* T.C. Memo 2012-358; *Merino v. Commissioner,* T.C. Memo 2013-167.

**RULINGS ON PHASE 1 LEGAL ISSUES**

1
2
3

pursuant to 26 U.S.C. § 6213(b)(3) to collect a tentative refund of taxes from a net operating loss carryback from tax year 2008, which the IRS now says was erroneously made.

4
5
6
7
8
9
10
11
12
13
14
15
16
17

Under 26 U.S.C. § 6411(a), a taxpayer who incurs a net operating loss ("NOL") may apply for a "quick refund" based on a tentative carryback adjustment of the taxes for the taxable years prior to the NOL year which are affected by the carryback of the NOL.  *Pesch v. Commissioner,* 78 T.C. 100, 113-114 (1982) (citing 26 C.F.R. § 1.6411-1(a)) (footnote omitted).  In this case, on October 19, 2008, Debtor filed an application for a "quick refund" based on a tentative carryback adjustment of his taxes for the taxable years prior to the NOL year of 2008 which were affected by the carryback of the NOL, specifically, tax year 2006.  Under 26 U.S.C. § 6411(b), the IRS is required within a 90-day period to undertake a limited examination of the application to discover omissions and errors of computation, determine the amount of the decrease in the tax occasioned by the carryback, and make the appropriate credit or refund.  *Pesch v. Commissioner,* 78 T.C. at 114 (citing 26 C.F.R. § 1.6411-3) (footnote omitted).

18
19
20
21
22
23
24
25
26
27
28

The purpose of the "quick refund" procedure for NOL carrybacks was stated in the legislative history of Section 3780 of the Internal Revenue Code of 1939, which is reflected in the current Internal Revenue Code, 26 U.S.C., in Section 6411, as described by the Tax Court in *Pesch v. Commissioner,* 78 T.C. at 116-117:  "Anticipating the successful conclusion of World War II, Congress designed the Tax Adjustment Act to facilitate reconversion and readjustment to peacetime production.  Congress was specifically concerned that reconversion might be impeded by shortages of cash and was troubled by the length of time it took under existing law for a taxpayer to obtain a refund from a carryback of a net operating loss.  Accordingly, in order to encourage speedy reconversion and vigorous business expansion,

-10-

1    the act provided for prompt payment of refunds attributable to carrybacks of

2    NOLs.  The statutorily prescribed 90-day period was thus designed 'To

3    speed up the operation of the carry-back refund procedure, so that

4    taxpayers may have the benefits of a currently improved cash position for

5    reconversion.'"  *Id.* (citing*, inter alia,* H.R. Rep. 79-849, 79th Cong., 1st Sess.

6    (1945) and S. Rep. 79-458, 79th Cong., 1st Sess. (1945)).  In light of the

7    expeditious processing of tentative NOL carryback refunds, in the situation

8    of erroneously allowed refunds, Congress also enacted three alternative

9    remedies for the IRS to recover such erroneously allowed tentative NOL

10   carryback refunds: (1) the IRS may summarily assess a deficiency

11   attributable to a tentative carryback adjustment as if due to a mathematical

12   or clerical error appearing on the tax return pursuant to 26 U.S.C.

13   § 6213(b)(3); (2) a civil action may be brought in the name of the United

14   States to recover the erroneous refund pursuant to 26 U.S.C. § 7405; or

15   (3) the IRS may issue a statutory notice of deficiency under 26 U.S.C.

16   § 6212 and thereby subject the refund to the usual tax deficiency

17   procedures, including review by the Tax Court, prescribed by 26 U.S.C.

18   § 6211-6215.  *Id.* (citations omitted).  "The selection of a particular remedy is

19   within the IRS's discretion, as none is exclusive."  *Id.* (citations omitted).

20            In this case, on April 5, 2013, the IRS summarily assessed as a

21   deficiency the excess refund of income taxes for 2006 from disallowance of

22   the tentative NOL carryback from 2008 in the amount of $2,415,779

23   pursuant to 26 U.S.C. § 6213(b)(3).  *First Amended Complaint,* ECF 926,

24   ¶ 47. The summary assessment of this deficiency made on April 5, 2013

25   was timely because Debtor had executed a consent to extend time for the

26   IRS to make an assessment of tax for the refund for tax year 2006 to April

27   15, 2013.  *First Amended Complaint,* ECF 926, ¶ 46.  The summary

28   assessment of an excessive tentative carryback refund was statutorily

-11-

**RULINGS ON PHASE 1 LEGAL ISSUES**

authorized by 26 U.S.C. § 6213(b)(3), which provides: "If the Secretary

determines that the amount applied, credited, or refunded under [26 U.S.C.]

section 6411 is in excess of the overassessment attributable to the

carryback or the amount described in [26 U.S.C.] section 1341(b)(1) with

respect to which such amount was applied, credited, or refunded, he may

assess without regard to the provisions of paragraph (2) [of 26 U.S.C.

§ 6213(b)] the amount of the excess as a deficiency as if it were due to a

mathematical or clerical error appearing on the return."  26 U.S.C.

§ 6213(b)(3).  As stated by one tax treatise, "If an excessive tentative

carryback refund is erroneously allowed, the amount erroneously credited or

refunded can be assessed and collected without issuance of a deficiency

notice in the same manner as an assessment due to a mathematical or

clerical error except that the abatement procedures [of 26 U.S.C.

§ 6213(b)(2)] do not apply."  *RIA Federal Tax Coordinator 2d,* ¶  T-3633

(online ed. February 2019) (internal citation omitted) (citing 26 U.S.C.

§ 6213(b)(3) and *Blansett v. United States,* 283 F.2d 474 (8th Cir. 1960)).

This treatise further observed: "The fact that IRS doesn't include an

explanation with the assessment doesn't invalidate the assessment."  *Id.*

(citing *Midland Mortgage Co. v. United States,* 576 F.Supp. 101 (W.D. Okla.

1983), *later proceeding,* 53 A.F.T.R.2d 84-544, 84-1 U.S.T.C. ¶  9188 (W.D.

Okla. 1984)).  The treatise also commented: "Such an assessment can't be

litigated before payment in either the Tax Court or district court."  *Id.* (citing

*Nalley v. Ross,* 308 F.Supp. 1388 (N.D. Ga. 1969)).  Thus, in order to

challenge in court the IRS's assessment of federal income taxes based on

disallowance of an excessive tentative loss carryback refund in litigation, the

taxpayer must pay the assessed tax in full and sue for a refund.  *Id.*

However, this observation (regarding the general rule for litigation

disputes over tax assessments of excessive tentative loss carryback income

-12-

refunds pursuant to 26 U.S.C. § 6213(b)(3) requiring payment of tax before

litigation may be brought by the taxpayer) applies outside of bankruptcy.

This observation does not address the jurisdiction of the bankruptcy courts

to determine tax liabilities pursuant to 11 U.S.C. § 505(a), such as here on

an objection to an IRS tax claim for income taxes based on disallowance of

an excessive tentative carryback refund.  Payment of the tax is not required

in order for the bankruptcy court to have jurisdiction to determine the amount

or legality of the tax as provided in 11 U.S.C. § 505(a) as part of the court's

determination whether to sustain or overrule Debtor's objection to the IRS

claim.

The procedural issue which is perhaps the most hotly contested

between the parties is over the grounds on which the income tax deficiency

here from the excess tentative carryback refund may be proved or

disproved, and the arguments of the parties that the other side may not raise

a particular issue in this case are generally incorrect.  In reaching this

conclusion, the court cites and quotes a concise and helpful discussion of

the applicable statutory and case law in a leading tax procedure treatise,

Saltzman and Book, *IRS Practice and Procedure,* § 5.03[4][b][i] (online ed.,

February 2019), specifically addressing the interplay between 26 U.S.C.

§§ 6501(h) and (k) and the case precedent of the Tax Court interpreting

these statutory provisions.  As stated by this authority, "When a refund is

granted under [26 U.S.C.] Section 6411 by way of a tentative carryback

claim, [26 U.S.C.] Section 6501(k) permits the [Internal Revenue] Service to

assess a deficiency for the carryback on grounds not attributable to the

carryback as long as the deficiency does not exceed the amount of the

refund the taxpayer received, reduced by the amount of the deficiency

actually attributable to the carryback." *Id.* (citing *Maxcy v. Commissioner,* 59

T.C. 716 (1973) and *Pesch v. Commissioner,* 78 T.C. 100 (1982)) (footnote

-13-

omitted).  "The portion of the deficiency attributable to the carryback is assessable under [26 U.S.C.] Section 6501(h) (if it is a net operating or capital loss carryback), and the balance of the deficiency up to the tentative refund amount is assessable under [26 U.S.C.] Section 6501(k)."  *Id.* (citing *Jones v. Commissioner,* 71 T.C. 291 (1978) and 26 C.F.R. § 301.6501(m)-1(a)) (footnote omitted).  "However, owing to the difference between the two provisions, the deficiency may be proved or disproved on any ground to the extent that assessment of the deficiency is attempted under [26 U.S.C.] Section 6501(m) [now renumbered as Section 6501(k)]."  *Id.* (citing *Jones v. Commissioner,* 71 T.C. 391, 397 (1978) and *Maxcy v. Commissioner,* 59 T.C. 716, 730-731 (1973)) (footnote omitted); *see also* 26 C.F.R. § 301.6501(m)-1 (setting forth illustrative example of how the interplay between 26 U.S.C. §§ 6501(h) and (k) works.  In *Maxcy v. Commissioner,* the Tax Court rejected the IRS's position that the taxpayers could not apply an unused investment tax credit to an income tax deficiency from an excess tentative carryback refund otherwise barred by a refund claim statute of limitations under 26 U.S.C. §§ 6211(a) and (b) and 6512(b)(2) because, pursuant to 26 U.S.C. § 6501(m) [now § 6501(k)], "the prior [i.e., pre-1966] transactional limitations involved in the determination of such deficiencies were eliminated."  59 T.C. at 730 and n. 13 (citations omitted).[2]

Because the IRS exercised its discretion to choose the remedy of summary assessment pursuant to 26 U.S.C. § 6213(b)(3) to recover the erroneous tentative NOL carryback refund, the procedural rules relating to the other remedies of a civil action for erroneous refund under 26 U.S.C. § 7405 and the issuance of a statutory notice of deficiency under 26 U.S.C.

---

[2]   The court in *Maxcy* in footnote 13 cited to *Bouchey v. Commissioner,* 19 T.C. 1078 (1953) and *Leuthesser,* 18 T.C. 1112 (1952) regarding the transactional limitations applicable to deficiencies asserted under 11 U.S.C. § 6501(b) for regular claims for refund based on net operating loss carrybacks as opposed to tentative refund claims at issue here.  Thus, Debtor's reliance on *Bouchey v. Commissioner* and *Leuthesser v. Commissioner* in his proposed findings of fact and conclusions of law (ECF 1360) at page 35 is misplaced.

-14-

§ 6212 are inapplicable and do not govern here, and neither party is constrained from proving or disproving the deficiency to the extent it is attempted under 26 U.S.C. § 6501(k), i.e., not on grounds attributable to the carryback as long as the deficiency does not exceed the amount of the refund that Debtor received, reduced by the amount of deficiency actually attributable to the carryback.  *See, e.g., Maxcy v. Commissioner,* 58 T.C. at 729-731.  Thus, the court is not limited in exercising jurisdiction pursuant to 11 U.S.C. § 505(a) in determining whether the tax liability based on the IRS's deficiency determination based on an excess refund from disallowance of a tentative net operating loss carryback and can consider any grounds to prove or disprove the deficiency pursuant to 26 U.S.C. § 6501(h) and (k).  The court believes that this is also consistent with the rule in tax refund litigation that the court must determine the correct amount of the tax in order to determine the amount of tax refund to Debtor, and the court may consider any grounds for such a determination, pursuant to *Lewis v. Reynolds*, 284 U.S. 281, 282-283 (1932).

(ii)    Whether in allowing the IRS Claim, this court can base its decision on deficiencies attributable to adjustments to the 2002 through 2005 NOL CFs, 2006 Adjusted AGI, and the 2007 NOL, or whether the court is limited to considering deficiencies attributable to adjustments to the 2008 NOL that formed the basis for the IRS's assessment made pursuant to 26 U.S.C. § 6213(b)(3).  *Joint Pre-Trial Stipulation*, ECF 1329 at 10, ¶ 4(B).

**Ruling**:   As discussed above, the court is not so limited because the court is exercising jurisdiction pursuant to 11 U.S.C. § 505(a) to determine the correct amount of the deficiency from the excess refund from the disallowance of the tentative carryback refund pursuant to 26 U.S.C. §§ 6501(h) and (k) and *Maxcy v. Commissioner,* 58 T.C. at 729-731*, for which the parties may prove or disprove the deficiency on any ground to the

-15-

extent that the deficiency was not attributable to the carryback not exceeding

the amount of the refund, minus the amount of the deficiency attributable to

the carryback, and to determine the correct amount of the tax refund that

Debtor was entitled to, and in order to do that, the court has jurisdiction to

determine the correct amount of the tax which may involve adjustments

affecting the computation of the tax year 2006 arising from adjustments from

other tax years pursuant to *Lewis v. Reynolds*, 284 U.S. at 282-283.

e.    South Coast Home Furnishings

(i)    Whether any losses reported by South Coast Home Furnishing

Center, LLC are included in the calculation of Debtor's 2008 NOL.  *Joint Pre-Trial

Stipulation*, ECF 1329 at 10, ¶ 5.

**Ruling**:  The answer is no.  Such losses are not properly included because

Debtor's inclusion of the losses reported by South Coast Home Furnishing

Center, LLC was for accelerated loan amortization expenses based on the

assumption that the loan was terminated in 2008 based on Debtor's

agreement to consent to foreclosure in November 2008, but Debtor has not

shown that such agreement in the stipulated agreement between the state

court appointed receiver, the lender, and South Coast Home Furnishing

Center, LLC, terminated the loan to permit an acceleration of loan

amortization expenses.  *Joint Exhibit 160; see also* 1 Witkin, *Summary of

California Law,* Contracts, § 958 (11th ed., online edition, June 2018 update)

(citing, *inter alia, Grant v. Aerodraulics Co.,* 91 Cal.App.2d 68, 75 (1949)

("To 'terminate' a contract . . . means to abrogate so much of it as remains

unperformed, thereby doing away with the existing agreement upon the

terms and consequences agreed upon.")).  Debtor's documentary evidence

consisting of Joint Exhibits 152-160 does not show that the loan was

terminated and ownership of the property transferred from Debtor's entity,

South Coast Home Furnishing Center, LLC, to the lender or the purchaser at

the foreclosure sale in 2008.  Debtor has not shown by a preponderance of the evidence that as a matter of applicable state law (apparently California since the property is situated there), the loan terminated in 2008 before the lender actually foreclosed on the loan and conducted the foreclosure sale in 2009.  Debtor's entity, South Coast Home Furnishing Center, LLC, remained obligated on the loan on the property until the property was sold in the foreclosure sale, and the loan remained in effect until the power of sale in the deed of trust was exercised on behalf of the lender.  *See* 4 Witkin, *Summary of California Law,* Security Transactions in Real Property, §§ 6 and 184.

f.    Fayetteville Shale

(i)    Whether Debtor is allowed to include any losses reported by Fayetteville Shale, LLC in the calculation of Debtor's 2008 NOL.  *Joint Pre-Trial Stipulation*, ECF 1329 at 10, ¶  6.

**Ruling**:  The answer is yes because Debtor's testimony that his investment in Fayetteville Shale, LLC (a 82.5% membership interest) became worthless due to the expiration of its shale oil leases in 2008 is credible, supported by other documentation, such as Fayetteville Shale's final tax return and workpapers for 2008, and substantiates his claim that such investment became worthless that year, which is a deductible loss pursuant to 26 U.S.C. § 165.  The IRS Form 1065-Partnership Income Tax Return, filed by Fayetteville Shale, LLC, is marked as a "final return," and the IRS Form K-1 issued to Debtor reported a loss passed through to him in the amount of $1,266,875.00.  *Joint Exhibit 161* at 1-2.  The books and records of Fayetteville Shale, LLC, reflect an abandonment loss in the amount of $1,401,376.48.  *Joint Exhibit 163.*  Debtor testified that the entity's shale oil leases were short term and had not produced and were unlikely to produce, and therefore, the entity was terminated because its leases were worthless

-17-

1    and/or terminated by December 31, 2008.  *Williams Trial Declaration,* ECF

2    1336, ¶  72.  The court finds that Debtor's testimony and supporting

3    evidence of the entity's worthlessness and termination in 2008 is credible

4    and substantiates the worthless interest loss by a preponderance of the

5    evidence for purposes of 26 U.S.C. § 165.

6    g.    Worthless Loss

7        (i)        Whether Debtor is barred from claiming any losses under 26 U.S.C.

8    § 165(a) due to his failure to report his interest in the entities as worthless on his

9    2008 federal income tax return.  *Joint Pre-Trial Stipulation*, ECF 1329 at 10, ¶  7.

10    **Ruling**:   The answer is no.  As discussed above, since the court is

11    exercising jurisdiction pursuant to 11 U.S.C. § 505(a) to determine the

12    correct amount of the deficiency from the excess refund from the

13    disallowance of the tentative carryback refund pursuant to 26 U.S.C.

14    §§ 6501(h) and (k) and *Maxcy v. Commisioner,* 58 T.C. at 729-731*,* the

15    parties may prove or disprove the deficiency on any ground to the extent

16    that the deficiency was not attributable to the carryback not exceeding the

17    amount of the refund, minus the amount of the deficiency attributable to the

18    carryback, and may assert any ground to determine the correct amount of

19    the tax liability in order to determine what was the correct amount of the

20    refund that Debtor was entitled to pursuant to *Lewis v. Reynolds*, 284 U.S. at

21    282-283.  Thus, Debtor is not barred from claiming such losses now despite

22    a purported failure in claiming them on his tax return for tax year 2008.

23    B.    **Issues of Law to be Litigated by Debtor**

24    For Phase 1 of trial, Debtor sought to litigate to the following issues of law [*see*

25    *Joint Pretrial Stipulation*, ECF 1329 at 22]:

26    1.    Notwithstanding a determination of tax by this court pursuant to 11 U.S.C.

27    § 505(a), whether a valid assessment is a condition precedent or a condition subsequent

28    to the validity of the IRS Claim.  *Joint Pre-Trial Stipulation*, ECF 1329 at 22-23, ¶  1.

**Ruling**:  In this case, a valid assessment is not a condition precedent or a condition subsequent to the validity of the IRS Claim.  The IRS Claim was not yet assessed, but assessable, as of the petition date, and the tax liability was subsequently assessed.  The issue is whether or not the claim is the correct amount of the tax, not whether or not the assessment was procedurally valid, which it was pursuant to 26 U.S.C. § 6213(b)(3).

2.      Whether a deficiency related to an adjustment to the carryback year as distinguished from a deficiency attributable to 2008 NOL can be assessed by way of a 26 U.S.C. § 6213(b)(3) assessment.  *Joint Pre-Trial Stipulation*, ECF 1329 at 23, ¶  2.

**Ruling:**  The answer is yes because as discussed above, the IRS is permitted to prove the deficiency on any grounds, including adjustments in the carryback year, as opposed to adjustments attributable to the 2008 NOL carryback pursuant to 26 U.S.C. §§ 6501(h) and (k) at least to the amount of the tentative carryback refund, which was assessed pursuant to 26 U.S.C. § 6213(b)(3).

3.      Whether the Government has waived its right to make a claim for an erroneous refund pursuant to 26 U.S.C. § 7405.  *Joint Pre-Trial Stipulation*, ECF 1329 at 23, ¶  3.

**Ruling**:  In this case, the IRS Claim is based on the assessment of a tentative carryback refund that it determined was incorrect pursuant to 26 U.S.C. § 6213(b)(3) and is not bringing a civil action to recover an erroneous refund pursuant to 26 U.S.C. § 7405, and thus this is not a situation presenting an issue of waiver.

4.      Whether the IRS Claim is afforded priority pursuant to 11 U.S.C. § 507(a)(8).  *Joint Pre-Trial Stipulation*, ECF 1329 at 23, ¶  4.

**Ruling:**  The answer is yes because the tax was not yet assessed, but assessable, within the meaning of 11 U.S.C. § 507(a)(8)(A)(iii) as an income tax deficiency based on disallowance of a tentative carryback refund that was determined to have been erroneous and that deficiency was assessable pursuant to 26 U.S.C.

§ 6213(b)(3) based on the extension of the statute of limitations on assessment to April 15, 2013, which Debtor had consented to.

5.      Whether Debtor's status as a Qualified Real Estate Professional may be established by "reasonable means" and therefore contemporaneous business records are not required to be maintained to satisfy the requirements of 26 U.S.C. § 469(c)(7) pursuant to 26 CFR § 1.469-5T(f)(4).  *Joint Pre-Trial Stipulation*, ECF 1329 at 23, ¶  5.

**Ruling**:  The answer is yes pursuant to the regulations which provide that a taxpayer's status as a Qualified Real Estate Professional may be established by reasonable means, which implies other than contemporaneous business records.

6.      Whether 26 CFR § 1.469-9(e)(3)(ii) allows Debtor to count all work the Debtor performed in the management activity as long as it is performed in managing the Rental Real Estate Entities in which he owned a majority interest.  *Joint Pre-Trial Stipulation*, ECF 1329 at 23, ¶  6.

**Ruling**:   The answer is yes because although the regulation, 26 CFR § 1.469-9(e)(3)(ii), does not require a 100 percent ownership in a particular real estate interest, a majority ownership in a particular interest would demonstrate substantial and meaningful beneficial interest so that management activity could be considered performance of the taxpayer's own real estate interests within the meaning of the regulation.  It would be absurd to draw a distinction between a 99-percent owned interest and a 100-percent one, but having less than a majority interest might give rise to manipulation and abuse of attribution of management activity in grouping. However, as the example in 26 CFR § 1.469-9(e)(4)(i) indicates, whether all work performed in the management activity may be counted as to a particular rental real estate activity or a grouping of rental real estate activities will depend on the grouping.

7.      Whether 26 CFR § 1.469-9(e)(3)(ii) does or does not require a Debtor to delineate or categorize work performed in the management activity.  *Joint Pre-Trial Stipulation*, ECF 1329 at 23, ¶  7.

-20-

**RULINGS ON PHASE 1 LEGAL ISSUES**

**Ruling**:  The regulation, 26 CFR § 1.469-9(e)(3)(ii), does not explicitly require a taxpayer to delineate or categorize work performed in the management activity as it provides that a qualifying taxpayer may count management of rental real estate as material participation in a rental real estate activity, which implies an obligation of the taxpayer to provide substantiation of such management activity relating to rental real estate to count as material participation in a rental real estate activity. Thus, substantiation is required, though no particular delineation or categorization is, though such may be helpful to demonstrate substantiation.

8.    Whether 26 CFR § 1.469-9(e)(3)(ii) allows all work engaged in by Debtor for the benefit of Leasco Management to be counted as work performed in managing Debtor's own rental real estate interests.  *Joint Pre-Trial Stipulation*, ECF 1329 at 23, ¶ 8.

**Ruling**:  Yes, based on a plain reading of the regulation, 26 C.F.R. § 1.469-9(e)(3)(ii), but only to the extent that such activity is performed in managing Debtor's own rental real estate interests, which would not include activity managing his non-rental real estate interests (such as his oil and gas interests).

9.    Whether Debtor's work is sufficient to qualify for the "investor" exception pursuant to 26 CFR § 1.469-5T(f)(2)(ii)(B).  *Joint Pre-Trial Stipulation*, ECF 1329 at 23, ¶ 9.

**Ruling**:  The evidence of Debtor's work as set forth in his trial declaration and the trial declaration of Lori Brenning indicates that subject to the need for Debtor to substantiate his material participation under the standards of 26 C.F.R. §1.469-5T in Phase 2 of the trial, his work may be sufficient to qualify for the "investor" exception pursuant to 26 C.F.R. § 1.469-5T(f)(2)(ii)(B) because Debtor was directly involved in the day-to-day management or operations of the rental real estate activities claimed by him as a single group in this case.  Whether such work constitutes material participation will be reserved for Phase 2 of the trial.

10.    Whether Debtor satisfies the reasonable cause requirement of Rev. Proc. 2011-34.  *Joint Pre-Trial Stipulation*, ECF 1329 at 23, ¶ 10.

**RULINGS ON PHASE 1 LEGAL ISSUES**

**Ruling:**  The answer is yes because the IRS granted administrative relief to allow Debtor to make the late 26 C.F.R. § 1.469-9(g) election, implicitly determining that Debtor satisfied the requirement of reasonable cause for its failure to meet the requirements of 26 C.F.R. § 1.469-9(g) pursuant to Section 4.01(4) of Rev. Proc. 2011-34.  As stated above, that the IRS had the authority to grant relief to allow Debtor to make the late election pursuant to Rev. Proc. 2011-34.

11.    Whether lack of prejudice to the Government is a requirement of Rev. Proc. 2011-34.  *Joint Pre-Trial Stipulation*, ECF 1329 at 23, ¶  11.

**Ruling:**  The answer is yes because Rev. Proc. 2011-34 expressly states that the lack of prejudice to the government is a requirement, but as stated above, because the IRS granted relief to allow Debtor to make the late election, it implicitly determined that Debtor satisfied the lack of prejudice to the government requirement.

12.    Whether the rental of the aircraft excluded it from the definition of rental of personal property for purposes of 26 CFR § 1.469-4(d)(1).  *Joint Pre-Trial Stipulation*, ECF 1329 at 23-24, ¶  12.

**Ruling**:  Based on this record, the rental of the aircraft was insubstantial which would exclude it from being defined as being in the trade or business of the rental of personal property for purposes of 26 C.F.R. § 1.469-4(d)(1).  The record indicates that the rental of the aircraft was minimal in proportion to its primary use to support the business operations of rental real estate activities of Debtor.

13.    What is the definition of "grouping" for purposes of 26 U.S.C. § 469?  *Joint Pre-Trial Stipulation*, ECF 1329 at 24, ¶  13.

**Ruling**:  The court declines to rule on this issue because it requests a ruling in the abstract, which would be an advisory opinion rather than ruling on a specific concrete dispute before the court as to whether the grouping of activities by Debtor was proper.

**RULINGS ON PHASE 1 LEGAL ISSUES**

14.     Whether the Debtor was required to disclose its "grouping" for purposes of 26 U.S.C. § 469.  *Joint Pre-Trial Stipulation*, ECF 1329 at 24, ¶  14.

**Ruling**:  Although 26 C.F.R. § 1.469-4(e) provides that taxpayers must comply with disclosure requirements that the IRS may prescribe with respect to their original groupings of activities and the addition and disposition of specific activities within those chosen groupings in subsequent taxable years, the IRS did not prescribe any such disclosure requirements until January 25, 2010 when it issued Revenue Procedure 2010-13, prescribing such requirements.  26 C.F.R. § 1.469-4(e)(1); Rev. Proc. 2010-13.  Moreover, the disclosure requirements for a QREP election are contained in 26 C.F.R. § 1.469-9(g), which do not contain a requirement that a taxpayer list each any every activity or entity holding rental real estate activity for a valid QREP election.  Thus, the court agrees with Debtor that contrary to the contention of the United States, Debtor was not required to disclose its groupings of activities on its tax returns, including with respect to Debtor's reporting of income or loss on a specific line within his Form 1040 does not constitute grouping for purposes of 26 USC § 469(c)(7).  *See Stanley v. United States*, 2015 WL 7012853, 2015 U.S. Dist. LEXIS 153166 (W.D. Ark. 2015) (permitting treatment of particular items differently than as originally reported on taxpayer's originally filed return).

15.     Whether the aircraft activity was "insubstantial" in relation to the management trade or business activity as defined in 26 CFR § 1.469-4(d)(1).  *Joint Pre-Trial Stipulation*, ECF 1329 at 24, ¶  15.

**Ruling**:  Clarifying the question as referring to aircraft rental activity as insubstantial to constitute the trade or business of the rental of personal property as defined in 26 C.F.R. § 1.469-4(d)(1), the evidence indicates that the aircraft rental activity was insubstantial in relation to the management trade or business activity of Debtor in rental real estate.

16.     Whether grouping of a rental real estate activity with a non-rental real estate activity is prohibited by 26 CFR § 1.469-9(e)(3)(i).  *Joint Pre-Trial Stipulation*, ECF 1329 at 24, ¶ 1.

**Ruling**:  The answer is yes that the grouping of a rental real estate activity with a non-rental real estate activity is prohibited by 26 CFR § 1.469-9(e)(3)(i) as indicated by the statement in the regulation that a taxpayer's interest in a rental real estate activity may not be grouped with that taxpayer's real estate development or construction activity.

17.     Whether the aircraft activity and the management activity of the Rental Real Estate Properties constitute a single activity pursuant to 26 CFR § 1.469-4(c)(1).  *Joint Pre-Trial Stipulation*, ECF 1329 at 24, ¶ 17.

**Ruling**:  The answer is yes to the extent that the aircraft activity and the management activity of the rental real estate properties were supportive of Debtor's rental real estate activity, making these entities part of an appropriate economic unit with the Rental Real Estate Entities; thus, the aircraft activity and the management activity of the Rental Real Estate Entitites may constitute a single activity with the activities of the Rental Real Estate Entities as opposed to being separate trade or business activities of Debtor on their own.

18.     Whether the aircraft activity, the management activity of the Rental Real Estate Properties, and the Rental Real Estate activity constitute an "appropriate economic unit" pursuant to 26 CFR § 1.469-4(c)(1).  *Joint Pre-Trial Stipulation*, ECF 1329 at 24, ¶ 18.

**Ruling**:  The answer is yes because the aircraft activity, the management activity of the Rental Real Estate properties and the Rental Real Estate Activity of Debtor constituted an appropriate economic unit and thus a single activity under the facts and circumstances because of the presence of common ownership and control by Debtor and interdependencies between or among these activities since the aircraft activity and the management activity supported the Rental Real Estate Activity, that

-24-

is, to the extent that these activities supported the Rental Real Estate Activity (as opposed to the non-Rental Real Estate Activity).

**C.**    **Issues of Law to be Litigated by the United States**

For Phase 1 of trial, the United States sought to litigate to the following issues of law [*see Joint Pretrial Stipulation*, ECF 1329 at 24]:

1.    Is 11 U.S.C. § 505 an exception to the Declaratory Judgment Act thereby conferring jurisdiction upon the Bankruptcy Court to determine whether Debtor qualifies for the relief provided under Rev. Proc. 2011-34? *Joint Pre-Trial Stipulation*, ECF 1329 at 24, ¶ 1.

**Ruling**:  As discussed above, in this case the court does not exercise jurisdiction under 11 U.S.C. § 505 to determine whether Debtor qualifies for relief provided under Rev. Proc. 2011-34.  Pursuant to its jurisdiction under 11 U.S.C. § 505 to determine the validity of the claim of the IRS upon Debtor's objection, the court recognizes that the IRS has exercised its lawful discretion to determine that Debtor qualifies for relief provided under Rev. Proc. 2011-34 and granted Debtor the extension to make the late election to treat his rental real estate activities as a single activity.

2.    If the Bankruptcy Court has jurisdiction to make such a determination, did Debtor satisfy the requirements contained in Rev. Proc. 2011-34? *Joint Pre-Trial Stipulation*, ECF 1329 at 24, ¶ 2.

**Ruling**:  The answer is yes in part and no in part as discussed herein.

3.    Would allowing Debtor the relief he requests under Rev. Proc. 2011-34 prejudice the government?  *Joint Pre-Trial Stipulation*, ECF 1329 at 24, ¶ 3.

**Ruling:**  The answer is no since, as discussed above, the IRS made its administrative determination that Debtor may make a late election pursuant to Rev. Proc. 2011-34, implicitly determining that such late election would not prejudice the government.

**RULINGS ON PHASE 1 LEGAL ISSUES**

4.    Did Debtor make a valid election as required under 26 CFR § 1.469-9(g)? *Joint Pre-Trial Stipulation*, ECF 1329 at 24, ¶ 4.

**Ruling**:  The court finds that Debtor has not shown by a preponderance of the evidence that he made a timely and valid election as required by 26 CFR § 1.469-9(g), but that he has now made a late and valid election as required by 26 CFR § 1.469-9(G) pursuant to Rev. Proc. 2011-34 as authorized by the IRS.

5.    Does Debtor qualify for the exceptions to the passive activity rules under 26 U.S.C. § 469(c)(7) and 26 CFR § 1.469-9?  If Debtor satisfies the requirements, is Debtor limited to the list of rental real estate activities in his 2008 return?  *Joint Pre-Trial Stipulation*, ECF 1329 at 24-25, ¶ ¶ 5-6.

**Ruling**:  As discussed above, subject to Debtor's substantiation of his material participation under the standards of 26 C.F.R. § 1.469-5T, Debtor may qualify for the exceptions to the passive activity rules under 26 U.S.C. § 469(c)(7) and 26 C.F.R. § 1.469-9. Also, as discussed above, Debtor is not limited to the list of rental real estate activities in his 2008 return due to the absence of mandatory grouping disclosures by the IRS until 2010 after his 2008 return was filed.

6.    If Debtor is allowed to group his QREP activities, what activities are contained in this grouping?  *Joint Pre-Trial Stipulation*, ECF 1329 at 25, ¶ 7.

**Ruling**:  As discussed above, the evidence indicates that the rental real estate activities of the Rental Real Estate Entities and the Management Entities, including Leasco Aviation, constitute one appropriate economic unit pursuant to 26 C.F.R. § 1.469-4(c).  *See also* 26 U.S.C. § 469(c)(7)(A).

7.    Can Debtor group together in one QREP grouping all of the activities contained in his 2008 Schedule E (i.e., commercial, mini-storage, mobile home / RV park, and management)?  *Joint Pre-Trial Stipulation*, ECF 1329 at 25, ¶ 8.

**Ruling**:  The answer is yes because pursuant to 26 U.S.C. § 469(c)(7)(ii), a taxpayer may elect to treat all interests in rental real estate as one activity.  To the extent these activities are rental real estate activities, Debtor can group them.

8.      Is Debtor entitled to group together any of his activities under 26 C.F.R.
§ 1.469-4? *Joint Pre-Trial Stipulation*, ECF 1329 at 25, ¶ 9.

**Ruling**:  With respect to the rental real estate activities at issue in this case, Debtor

is seeking to group them pursuant to 26 U.S.C. § 469(c)(7)(ii) and 26 C.F.R.

§ 1.469-9 rather than 26 C.F.R. § 1.469-4.

9.      Was Leasco Aviation engaged in a trade or business?  *Joint Pre-Trial

Stipulation*, ECF 1329 at 25, ¶  10.

**Ruling**:  The answer is no because the evidence based on the testimony of Debtor

and Lori Brenning indicates that Leasco Aviation was not engaged in a trade or

business of renting personal property because it was organized to own two

airplanes to support Debtor's business activities, including the rental real estate

activity, and personal activities.

10.      If any Leasco Aviation deductions are invalid, can the Bankruptcy Court

make adjustments to the Leasco Aviation deductions for tax years 2002, 2003, 2004 and

2005? *Joint Pre-Trial Stipulation*, ECF 1329 at 25, ¶  11.

**Ruling**:  The answer is yes.  As discussed above, the court has jurisdiction under

11 U.S.C. § 505(a) to determine the correct tax liability of Debtor raised by his

objection to the claim of the IRS because the parties may prove or disprove the

claimed income tax deficiency from the excess refund from disallowance of the

tentative carryback refund by the IRS on any ground subject to the limitations of 26

U.S.C. §§ 6501(h) and (k) and may raise any ground to determine the correct

amount of the tax liability in order to determine the correct amount of the refund

that had been claimed by Debtor.  This means that the Bankruptcy Court may

make proposed adjustments asserted by the United States to the Leasco Aviation

deductions for tax years 2002, 2003, 2004 and 2005 insofar as they affect the NOL

carryovers to the tax liabilities at issue in this matter, that is, Debtor's income tax

liability for 2006.

**RULINGS ON PHASE 1 LEGAL ISSUES**

11.  Can Leasco Aviation's aircraft activity be grouped with Debtor's QREP activities? *Joint Pre-Trial Stipulation*, ECF 1329 at 25, ¶ 12.

> **Ruling**:  As discussed above, the answer is yes because Leasco Aviation's aircraft activity was to support Debtor's Rental Real Estate Activity to the extent it supported such activity.

12.  If the Court does allow that grouping, what QREP activities are contained in such grouping? *Joint Pre-Trial Stipulation*, ECF 1329 at 25, ¶ 13.

> **Ruling**:  The QREP activities of Leasco Aviation contained in such grouping would include its activities to transport Debtor in support of the management of the rental real estate entities.

13.  Assuming it is otherwise proper to group together aviation and QREP activities, can Debtor group his Leasco Aviation aviation activities with his QREP activities without violating 26 C.F.R. § 1.469-4(d)(5) by carving out these aviation activities from its oil, gas and mineral activities?  *Joint Pre-Trial Stipulation*, ECF 1329 at 25, ¶ 14.

> **Ruling**:   The answer is yes because the regulations relate to the grouping of activities as opposed to grouping of entities.

14.  Can Debtor include any losses from the Blue Heron property on his 2008 tax return? *Joint Pre-Trial Stipulation*, ECF 1329 at 25, ¶ 15.

> **Ruling**:  Based on the stipulation of the parties in the Joint Pre-Trial Stipulation, the loss in the amount of $4,575,254.00 based on the disposition of the real estate located at 44 Blue Heron, Irvine, California ("Blue Heron property") reported on Debtor's Form 4797 – Sales of Business Property should be excluded from the loss includible on Schedule E, line 43, and should be reported as follows: a Short Term Capital Loss in the amount of $4,668,242.00 and real estate taxes reportable on Schedule A subject to any additional limitations on itemized deductions.  *Joint Pre-Trial Stipulation*, ECF 1329 at 7, ¶ ¶  50-51.

15.  Is Debtor entitled to the deductions related to the South Coast Home Furnishing Center? *Joint Pre-Trial Stipulation*, ECF 1329 at 25, ¶ 16.

**RULINGS ON PHASE 1 LEGAL ISSUES**

1    **Ruling**:  The answer is no because, as discussed above, such losses are not

2    properly included in tax year 2008 because Debtor's inclusion of the losses

3    reported by South Coast Home Furnishing Center, LLC, was for accelerated loan

4    amortization expenses based on the assumption that the loan was terminated in

5    2008 based on Debtor's agreement to consent to foreclosure, but such agreement

6    by itself did not terminate the loan to permit an acceleration of loan amortization

7    expenses.  Debtor has not shown by a preponderance of the evidence that as a

8    matter of applicable state law, the loan terminated in 2018 before the lender

9    actually foreclosed on the loan and conducted the foreclosure sale in 2009.

10    16.    Is Debtor entitled to deductions related to Fayetteville Shale?  *Joint Pre-Trial*

11    *Stipulation*, ECF 1329 at 25, ¶  17.

12    **Ruling**:  The answer is yes because, as discussed above, the evidence based on

13    Debtor's testimony that his investment in Fayetteville Shale, LLC, became

14    worthless due to the expiration of its oil leases in 2008 is credible and substantiates

15    his claim that such investment became worthless that year.

16    17.    What adjustments can be made to Debtor's tax years under 26 U.S.C.

17    § 6501?  *Joint Pre-Trial Stipulation*, ECF 1329 at 25, ¶  18.

18    **Ruling**:  The answer is any adjustments because the parties may prove or disprove

19    the income tax deficiency from the excess refund from disallowance of the tentative

20    carryback refund by the IRS on any ground subject to the limitations of 26 U.S.C.

21    §§ 6501(h) and (k) as discussed above.

22    18.    In deciding Debtor's objection, can the Bankruptcy Court consider proposed

23    adjustments to the applicable NOLs by the United States that differ from any reasons

24    provided by the IRS?  *Joint Pre-Trial Stipulation*, ECF 1329 at 25-26, ¶  19.

25    **Ruling**:    The answer is yes because, as discussed above, the court has

26    jurisdiction under 11 U.S.C. § 505(a) to determine the correct tax liability of Debtor

27    raised by his objection to the claim of the IRS because the parties may prove or

28    disprove the claimed income tax deficiency from the excess refund from

-29-

disallowance of the tentative carryback refund by the IRS on any ground subject to the limitations of 26 U.S.C. §§ 6501(h) and (k) and may raise any ground to determine the correct amount of the tax liability in order to determine the correct amount of the refund that had been claimed by Debtor.  This means that the United States can assert proposed adjustments to the applicable NOLs that differ from any reasons provided by the IRS.

19.     Is the United States limited to the reasons provided by the IRS, where the United States contends that Debtor had not sought relief provided under Rev. Proc. 2011-34 either before or during the IRS examination, had not provided a valid election and had not otherwise established material participation either collectively or for each individual entity during the examination?  *Joint Pre-Trial Stipulation*, ECF 1329 at 26, ¶  20.

**Ruling**:  The answer is no because, as discussed above, the parties may prove or disprove the income tax deficiency from the excess refund from disallowance of the tentative carryback refund by the IRS on any ground subject to the limitations of 26 U.S.C. §§ 6501(h) and (k) and may raise any ground to determine the correct amount of the tax liability in order to determine the correct amount of the refund that had been claimed by Debtor.  This means that the United States is not limited by the reasons provided by the IRS in proving the income tax deficiency as asserted on the IRS proof of claim.

20.     Whether 11 U.S.C. § 505(a) permits the Bankruptcy Court to make adjustments to any applicable NOL CFs, and 2006 Adjusted AGI, or any 2007 NOL Carrybacks.  *Joint Pre-Trial Stipulation*, ECF 1329 at 26, ¶  21.

**Ruling**:  The answer is yes because, as discussed above, the court has jurisdiction under 11 U.S.C. § 505(a) to determine the correct tax liability of Debtor raised by his objection to the claim of the IRS because the parties may prove or disprove the claimed income tax deficiency from the excess refund from disallowance of the tentative carryback refund by the IRS on any ground subject to the limitations of 26 U.S.C. §§ 6501(h) and (k) and may raise any ground to determine the correct

**RULINGS ON PHASE 1 LEGAL ISSUES**

1   amount of the tax liability in order to determine the correct amount of the refund

2   that had been claimed by Debtor.  This means that Debtor's failure to report a

3   worthless loss on his timely filed income tax return is not a bar from claiming the

4   loss now.

5   21.   Whether the rental real estate activities and the management activities of the

6   Rental Real Estate Entities and the Management Entities, including the operation of

7   certain aircraft, constitute one or more "appropriate economic units" pursuant to 26 CFR

8   § 1.469-4(c).  *Joint Pre-Trial Stipulation*, ECF 1329 at 26, ¶ 22.

9   **Ruling**: As discussed above, the evidence indicates that the rental real estate

10   activities of the Rental Real Estate Entities and the Management Entities, including

11   Leasco Aviation, may constitute one appropriate economic unit pursuant to 26

12   C.F.R. § 1.469-4(c).  *See also* 26 U.S.C. § 469(c)(7)(A).

13   22.   Can Debtor rely upon 26 CFR § 1.469-4 to establish the validity of his losses

14   when he sought relief under Rev. Proc. 2011-34?  *Joint Pre-Trial Stipulation*, ECF 1329 at

15   26, ¶ 23.

16   **Ruling**:  Based on Debtor's Pre-Trial Brief, Debtor is not arguing reliance on the

17   regulations under 26 C.F.R. § 1.469-4, but the regulations under 26 C.F.R. § 1.469-

18   9 pertaining specifically to rental real estate activities.  *Debtor's Pre-Trial Brief,* ECF

19   1345 at 23 (document page 15).

20   23.   Whether Debtor is barred from claiming a worthless loss due to his failure to

21   report on his timely filed income tax return.  *Joint Pre-Trial Stipulation*, ECF 1329 at 26,

22   ¶ 24.

23   **Ruling:**  The answer is no because, as discussed above, the parties may prove or

24   disprove the income tax deficiency from the excess refund from disallowance of the

25   tentative carryback refund by the IRS on any ground subject to the limitations of 26

26   U.S.C. §§ 6501(h) and (k) and may raise any ground to determine the correct

27   amount of the tax liability in order to determine the correct amount of the refund

28   that had been claimed by Debtor.  This means that Debtor's failure to report a

-31-

1   worthless loss on his timely filed income tax return is not a bar from claiming the

2   loss now.

3       24.    Whether Debtor can recharacterize his tax returns to alter the groupings or

4   to alter the characterization of the item on the return (*i.e.*, argue that the interests are

5   worthless or abandoned). *Joint Pre-Trial Stipulation*, ECF 1329 at 26, ¶ 25.

6       **Ruling**:  The answer is yes because, as discussed above, Debtor was not required

7       to disclose his groupings of activities on his original tax returns for the tax years in

8       suit, i.e., 2006 and 2008, because the IRS had not prescribed the required

9       disclosures of groupings until it issued Rev. Proc. 2010-13 in 2010, and the parties

10      may prove or disprove the deficiency from the excess refund from disallowance of

11      the tentative carryback refund by the IRS on any ground subject to the limitations of

12      26 U.S.C. §§ 6501(h) and (k) and may raise any ground to determine the correct

13      amount of the tax liability in order to determine the correct amount of the refund

14      that had been claimed by Debtor.  This means that Debtor's failure to report a

15      worthless loss on his timely filed income tax return is not a bar from claiming the

16      loss now.

17

18      In their Joint Pre-Trial Stipulation, the parties stated that to the extent not covered

19  by the above-listed legal issues, the legal issues raised and not otherwise disposed of by

20  the Court in their previously filed cross-motions for summary judgment would be issues to

21  be decided during the trial. *Joint Pre-Trial Stipulation*, ECF 1329 at 24 and 26.  To the

22  extent these other issues are not addressed herein, the parties may assert them in Phase

23  2 of the trial.

24      Although the parties have argued which of them bears the burden of proof in this

25  contested matter, they did not identify burden of proof as one of the specific legal issues in

26  the Joint Pre-Trial Stipulation for the court to rule upon.  However, given the importance of

27  burden of proof, the court identifies the burden of proof in this matter.  As the Supreme

28  Court held in *Raleigh v. Illinois Department of Revenue,* 530 U.S. 15 (2000), "the burden

**RULINGS ON PHASE 1 LEGAL ISSUES**

1  of proof on a tax claim in bankruptcy remains where the substantive tax law puts it."  530

2  U.S. at 526.  The IRS's tax assessment is presumptively correct, and the taxpayer has the

3  burden of proving that the tax assessment is arbitrary or erroneous.  *Welch v. Helvering,*

4  290 U.S. 111, 114-115 (1933); *United States v. Molitor,* 337 F.2d 917, 922 (9th Cir. 1964).

5  This is particularly the case here because the IRS's tax assessment was based on

6  disallowance of tax deductions from the taxpayer's claimed net operating loss carrybacks

7  as deductions are a matter of legislative grace, and the taxpayer bears the burden of

8  proving entitlement to claimed deductions.  *INDOPCO, Inc. v. Commissioner,* 503 U.S. 79,

9  84 (1992).

10        At Debtor's urging, the court had considered applying 26 U.S.C. § 7491 in shifting

11  the burden of proof to the United States on factual issues relevant to ascertaining his tax

12  liabilities at issue in this case.  After careful consideration, the court declines at this time to

13  shift the burden of proof because it lacked evidence in the record on the prerequisites of

14  26 U.S.C. § 7491(a)(2): (1) the taxpayer's compliance with all substantiation requirements;

15  (2) the taxpayer's maintenance of all required records; and (3) the taxpayer's cooperation

16  with all reasonable requests for information from the IRS.  *See also Barnes v.*

17  *Commissioner,* T.C. Memo 2012-80, slip op. at *8 (2012).  Moreover, as discussed above,

18  regarding the issue of Debtor's hours of work, the court could not find pursuant to 26

19  U.S.C. § 7491(a)(1) that there was "credible evidence" at this time based on the

20  evidentiary showing in Phase 1 to find for Debtor on whether he met the various threshold

21  hours for material participation under 26 C.F.R. § 1.469-5T.  *Id.*  Since Debtor has the

22  burden of proving that the requirements of 2 U.S.C. § 7491 have been satisfied, the court

23  cannot find that he has met such burden in Phase 1, but this declination is without

24  prejudice to such a finding in Phase 2.  *Id.*

25        For clarity of the record, the court restates the rulings admitting certain of the joint

26  trial exhibits as discussed with the parties and stated on the record on June 2, 2017.  The

27  following were admitted: Exhibits 1-4, 5 and 6 (for demonstrative purposes only), 7-9, 12-

28

**RULINGS ON PHASE 1 LEGAL ISSUES**

25, 30-32, 35 and 36 (for limited purpose of showing Debtor's work hours and not for truth

of matters stated therein), 51, 68, 100, 101, 103, 106-129, 122-129, 154-171 and 175.

IT IS SO ORDERED.

# # #

Date: April 8, 2019

_____

Robert Kwan
United States Bankruptcy Judge

**RULINGS ON PHASE 1 LEGAL ISSUES**